On February 16, 2018, military commission judge (military judge) Vance H. Spath ruled that the trial of Abd Al-Rahim Hussayn Muhammad Al-Nashiri (Al-Nashiri) was indefinitely abated until a superior court orders him to resume. Tr. 12,297-98; Mil. J. Spath Resp. to Order (Mar. 26, 2018). Appellant timely filed an interlocutory appeal of that ruling under 10 U.S.C. § 950d(a)(1). Appellant Br. (Mar. 5, 2018).[1]
*1196 We reverse the military judge's decision to indefinitely abate the proceedings and order Al-Nashiri's trial to resume.
I. Statement of the Case
Our superior Court has "recount[ed] the details of Al-Nashiri's alleged offenses" and the procedural posture of the case in a previous decision. In re Al-Nashiri , 835 F.3d 110, 113-17 (D.C. Cir. 2016). After issuance of this decision, litigation in pretrial motions continued until the military judge issued the abatement order. On February 21, 2018, appellant filed a Notice of Appeal under 10 U.S.C. § 950d(a) of the military judge's decision to place Al-Nashiri's case in an indefinite abatement.
II. Issues Presented
Appellant urged our Court to
specifically hold that the Military Judge is the sole authority to determine if there is good cause shown on the record to warrant excusal of a defense counsel who has formed an attorney-client relationship with an accused and appeared before the Commission; hold that there is no absolute right to representation by learned counsel; reverse the Military Judge's abatement order as an abuse of his discretion; order that the proceedings be resumed with the presently detailed counsel; and grant whatever other relief the Court deems appropriate.
Appellant Br. 37 (Mar. 5, 2018). Al-Nashiri challenged the jurisdiction of our Court arguing that jurisdiction under 10 U.S.C. § 950d(a)(1) is limited to a decision of the military judge that is tantamount to dismissal of a charge or charges. Appellee Br. 1-2, 6-8 (Feb. 28, 2018). Al-Nashiri listed a series of government actions over a six-year period that he believes undermined his counsel's ability to effectively represent him. AE 389 at 29-37. These actions served as a basis for Al-Nashiri's three senior defense counsel (SDC) to stop attending commission hearings, purportedly ending their representation of Al-Nashiri. Id. at 17-37. Al-Nashiri argued that Brigadier General (BGen) John G. Baker, the Chief Defense Counsel (CDC), Military Commission Defense Office (MCDO), lawfully approved the excusal requests of Al-Nashiri's three SDC - namely, learned counsel Richard Kammen and counsel Mary E. Spears and Rosa A. Eliades. Appellee Br. 2-10, 14-15 (Apr. 9, 2018). Appellant countered that the releases of the three SDC from their representation of Al-Nashiri did not have a valid basis. Appellant Br. (Apr. 16, 2018). In any event, appellant asserted that the military judge's order to the CDC to rescind his excusal, and the military judge's orders to the SDC to continue to represent Al-Nashiri, are binding on the CDC and Al-Nashiri's counsel. See Appellant Br. 3-4 (July 23, 2018).
Al-Nashiri also argued that the abeyance should continue until a learned counsel is detailed to represent him. Appellee Br. 26-28 (Mar. 15, 2018). On October 11, 2017, the CDC excused Mr. Kammen. AE 339L at 5. The CDC or Acting CDC was responsible for the initial selection of replacement learned counsel. CDC/Acting CDC Resp. to Order (Mar. 30, 2018). From October 11, 2017, to January 8, 2018, the CDC or Acting CDC searched for, selected, and nominated a new learned counsel for Al-Nashiri. Id. at 1-3. The convening authority, however, declined to appoint new learned counsel until resolution of Mr. Kammen's status as Al-Nashiri's counsel. See id. at 3-4. As of February 16, 2018, the date the military judge abated the proceedings, Mr. Kammen had not returned to represent Al-Nashiri and new learned counsel had not been appointed. See id. at 4. The Acting CDC refused to detail additional counsel to assist Al-Nashiri's lone detailed counsel, Lieutenant (LT) Piette, U.S. Navy, because the Acting CDC wanted new learned counsel to be appointed first, and then new learned counsel would *1197 be able to choose additional counsel to represent Al-Nashiri. See Tr. 11,500-04.
We conclude: (1) the three SDC established an attorney-client relationship with Al-Nashiri, and they entered appearances before the military commission on behalf of Al-Nashiri; (2) good cause is required before the SDC may be excused from representing Al-Nashiri; (3) the CDC made the initial excusal decision without good cause because the SDC did not establish that the government intruded into Al-Nashiri's attorney-client relationships; (4) the military judge properly overruled the CDC's excusal decision; (5) the SDC are obligated to comply with the military judge's orders to continue to represent Al-Nashiri; (6) counsel must obey the military judge's orders unless a higher court overrules the military judge; (7) the CDC and Acting CDC abused their discretion and violated the Regulation for Trial by Military Commission (RTMC) when they failed to detail additional counsel to represent Al-Nashiri after it became apparent that the SDC would not return to represent Al-Nashiri and the military judge said he wanted to proceed with pretrial motions; (8) there is no absolute right to learned counsel; and (9) our Court declines to delay our decision pending litigation in the U.S. District Courts.
III. Facts
A. Detailing of Senior Defense Counsel
The then-current CDC appointed Richard Kammen on December 23, 2008, to represent Al-Nashiri as learned counsel under Manual for Military Commissions (MMC) (2007 ed.), Rule for Military Commissions (R.M.C.) 506. Tr. 11,004; see AE 389 at 9-15; AE 389F at 2-3 (citing MMC, pt. II.V, R.M.C. 506(b); 10 U.S.C. § 948k ). At the time of his appearance, Mr. Kammen signed an Affidavit and Agreement (MC Form 9-2) describing his duties and responsibilities as required by Chapter 9-5.b.1 of the RTMC. AE 389 at 9-15. Among other things, Mr. Kammen "agree[d] to comply with all applicable regulations and rules for counsel, including any rules of court governing proceedings ...." Id. at 11. He also agreed to represent Al-Nashiri "throughout the military commission process, from the inception of [his] representation through the completion of any post-trial proceedings" and "to ensure [detailed] counsel is capable of conducting the defense independently if necessary." Id. at 11, 13.
Ms. Spears and Ms. Eliades are both civilian employees of the Department of Defense (DoD). AE 389J at 1. In 2015, they were detailed to serve as assistant defense counsel by BGen Baker, then-CDC, MCDO. AE 339E & AE 339F, Attachs. B. The CDC is required to supervise MCDO lawyers. RTMC, ch. 9-1.a.3 (2011 & 2016 eds.). This includes ensuring their compliance "with, the M.C.A. [Military Commissions Act], the M.M.C., this Regulation [RTMC], all Supplementary Regulations and Instructions issued in accordance therewith, and the orders of the commission ." Id. (emphasis added). Ms. Spears and Ms. Eliades signed an Acknowledgement of Responsibilities document. See AE 339E & AE 339F, Attachs. B. Their acknowledgements did not require compliance with orders of the commission. Tr. 11,493; 11,507-08; see AE 339E & AE 339F, Attachs. B. It is unclear if this was because as DoD employees they are subject to supervision by their superiors.
B. Allegations that the Government Intruded into the Attorney-Client Relationship of Al-Nashiri and other Defendants and Detainees
Mr. Kammen requested excusal from representing Al-Nashiri, and he cited a series of intrusions into the attorney-client *1198 relationship from October 2011 ("Guards confiscate privileged legal materials from the accuseds' cells, and JTF GTMO's [Joint Task Force Guantanamo, Cuba] legal department reads counsels' correspondence to their clients. Defense counsel have no ability to independently investigate the extent of the disclosure or whether intelligence agencies were involved." (footnote omitted) ) to June 2017 ("The government acknowledges having 'unintentionally' eavesdropped on attorney-client communications at Guantanamo."). AE 389 at 19-37. Appellee did not present any evidence that the prosecutors involved in this case received access to communications to or from Al-Nashiri or his counsel. The most prominent alleged intrusions will be discussed in detail.
In January 2012, the JTF-GTMO Staff Judge Advocate learned that microphones were hidden inside a smoke detector where defense counsel met with their clients. Appellee Br. 6 (Mar. 15, 2018); AE 389 at 31-32. A military judge ordered the listening devices to be dismantled. AE 389 at 32. There is no evidence that the microphones were ever used to monitor communications between Al-Nashiri and his counsel. Tr. 10,038; AE 369ZZZ.
Al-Nashiri alleged that the government accessed the attorney-client mail of detainees at Guantanamo. Appellant Br. 5 (Mar. 5, 2018); AE 389 at 29-30. In February 2012, the military judge ordered the establishment of a Privilege Review Team (PRT), independent from JTF-GTMO and the prosecution, to screen detainee legal mail for prohibited contraband. AE 027 at 2-3. Al-Nashiri did not present any evidence that the PRT violated the military judge's restrictions prohibiting the PRT from communicating contents of detainee mail to prosecutors.
Al-Nashiri alleged that in 2013, during technical upgrades of servers and other technology, DoD information technology (IT) personnel caused the loss of numerous defense files. AE 153 at 9-10; AE 389 at 33.[2]
Al-Nashiri objected to DoD IT personnel monitoring of computer Internet searches. Appellee Br. 6 (Mar. 15, 2018) (citing AE 153). DoD IT personnel monitor all DoD computer systems for inappropriate use.[3] DoD IT personnel also have access to all files stored on DoD computers connected to DoD servers, including attorney-client communications. AE 153 at 15. A DoD IT person checked a defense employee's files for improper materials. Id. at 10-12; see United States v. Al Qosi , 28 F.Supp.3d 1198, 1205 (CMCR 2014).
On June 14, 2017, the CDC wrote his subordinate MCDO defense counsel and advised them he had recently received information that led him to believe that there was no guarantee of confidentiality for attorney-client communications in the rooms that the JTF-GTMO and the Joint Detention Group provided for defense counsel to meet with their clients. Tr. 10,037; AE 389 at 23. He cautioned counsel to *1199 "not conduct any attorney-client meetings at Guantanamo Bay, Cuba until they know with certainty that improper monitoring of such meetings is not occurring." Appellee Br. 6-7 (Mar. 15, 2018); Tr. 10,037.
On the same day, the CDC wrote further:
On 30 November 2016, the Military Judge in United States v. Khalid Shaikh Mohammed et al. ordered that intrusive monitoring (i.e., listening and audio and video recording) of attorney-client meetings be formally prohibited in the standard operating procedures for [JTF-GTMO] and the [Joint Detention Group]. The Military Judge further ordered that defense counsel must be advised in advance if a meeting with an accused is to be monitored. The Military Judge issued these orders because he recognized the legitimate concerns of defense attorneys that attorney-client meetings at GTMO were being improperly monitored by government personnel.
At present, I am not confident that the prohibition on improper monitoring of attorney-client meetings at GTMO as ordered by the commission is being followed. My loss of confidence extends to all potential attorney-client meeting locations at GTMO. Consequently, I have found it necessary as part of my supervisory responsibilities under 9-1a.2 and 9-1a.9 of the Regulation for Trial by Military Commission to make the above-described recommendation to all MCDO defense counsel. Whether, and to what extent, defense teams follow this advice is up to the individual defense team.
AE 389G at 26.
On July 7, 2017, the military judge ruled that he did not have the authority to allow SDC to discuss classified information with Al-Nashiri, who had no security clearance. AE 369OO. In doing so, the military judge noted, "the Government, as officers of the court, have represented facts which affirmatively negate what the Defense seeks to disclose to the Accused." Id. Each of Al-Nashiri's lawyers had a security clearance that required them not to disclose classified information to anyone who was not authorized to receive it.
The defense moved on July 13, 2017, to take discovery regarding potential intrusion by the government into privileged communications. Appellee Br. 8 (Mar. 15, 2018) (citing AE 369PP). On September 20, 2017, the military judge denied Al-Nashiri's request for discovery. Tr. 10,037 (citing 369YYY); see also Appellee Br. 8 (Mar. 15, 2018) (citing AE 369YYY-AE 369CCCC). After full briefing that included classified information, the military judge concluded that there was no "basis to find there had been an intrusion into attorney-client communications" between Al-Nashiri and his counsel. Tr. 10,038; see also AE 369ZZZ.
Despite the repeated urgings of the military judge, the government took several months to declassify the circumstances involving the microphone or microphones found in April 2017 in the room in which defense counsel and Al-Nashiri met. See Appellant Juris. Br. 5 & n.18 (Mar. 5, 2018).[4] Most of the information was released *1200 after the SDC ended their representation of Al-Nashiri. Some information about the intrusions relating to detainees other than Al-Nashiri and the August 2017 inspection of a room in which Al-Nashiri and his counsel previously met continues to be classified. App. B.
In August 2017, a defense inspection of the room allocated for meetings between Al-Nashiri and his counsel revealed a microphone or microphones that were not connected to recording or transmission equipment. Appellant Disc. Br. Ex. 1, Wells Decl. ¶¶ 19, 20.v-w (June 5, 2018) (Wells Decl.). The government referred to the devices as "legacy" microphones left over from before 2012 when the building was configured for detainee interviews. Id. at ¶¶ 19, 20, 34 & at Attach. B.2; Appellant Juris. Br. 5 (Mar. 5, 2018). Thus, Al-Nashiri's meeting room was equipped with recording equipment. Appellant Juris. Br. 5 (Mar. 5, 2018). However, the government represented to the military judge that when Al-Nashiri met with his SDC, the room
included disconnected, legacy microphones that were not connected to any audio listening/recording device. While it was apparent that this room serving as the new meeting location had been previously configured for interviews, no audio equipment was used while Mr. al Nashiri was in the room.
Id. (detailing facts declassified after the military judge abated the proceedings).
As the events unfolded during the summer of 2017, Mr. Kammen sought an opinion from Ellen Yaroshefsky, an ethicist and professor at Hofstra University's School of Law in New York[5] regarding his ethical obligations to continue to represent Al-Nashiri in light of SDC's concerns. See AE 339L at 8; AE 389 at 21. As understood by Professor Yaroshefsky, Mr. Kammen was concerned that (1) the government had intruded into SDC's privileged communications with Al-Nashiri, and (2) SDC lacked confidence that they could securely communicate with their client, and because of this lack of confidence SDC were unable to inform Al-Nashiri of these matters and discuss their concerns with him. See AE 339L at 10-11; AE 389 at 23-34.
In addition to the dispute involving "legacy" microphone(s) in the meeting room where Al-Nashiri met with his counsel, the bases of SDC's concerns over the security of their privileged communications with Al-Nashiri included a series of events that occurred between 2008 and 2017. Among these events were intrusions or alleged intrusions by the government into the privileged communications of detainees and defendants at JTF-GTMO. Mr. Kammen summarized the SDC contentions regarding these matters in a document titled, "Governmental Interference with Attorney-Client Communications, Intrusions into Attorney-Client Relationships, Undisclosed Monitoring, and Infiltration of Defense Teams" (Defense Intrusion Allegations). AE 339L at 16-24; AE 389 at 29-37.
Al-Nashiri's contentions principally can be divided into four categories: the United States did or allegedly did: (a) overhear attorney-client conversations and seize privileged materials; (b) obtain emails sent and received by defense counsel; (c) allow JTF-GTMO staff to review legal mail for security reasons; and (d) allow attorney-client meetings to be held in rooms that had (i) microphones concealed as smoke detectors and (ii) "legacy" microphones that, according to the government, no longer were connected to recording devices.
*1201 See AE 339L at 16-24; AE 389 at 29-37; Appellant Juris. Br. 5-6 (Mar. 5, 2018). The defense community also contended that the government sought to insert an informant in their midst and complained about the lack of timely and effective action by the commissions and the DoD to address defense counsel concerns regarding communications with their clients. See AE 389 at 34-35; AE 389N at 379.
Significantly, there is no evidence that the prosecution received any privileged information involving Al-Nashiri. The only contention in the Defense Intrusion Allegations that specifically discusses Al-Nashiri, as opposed to allegations about compromising attorney-client confidentiality rights of detainees other than Al-Nashiri, involves the "legacy" microphone(s) found in the room where Al-Nashiri met with his counsel. See AE 339L at 16-24; AE 389 at 29-37; Appellant Juris. Br. 5-6 (Mar. 5, 2018).
Appellee did not cite validation documentation in support of most of the Defense Intrusion Allegations.[6] In addition, the Defense Intrusion Allegations, among other things, did not disclose that a motion for Al-Nashiri to meet with his counsel in the courtroom, a secure location, was pending. See AE 369AAA; AE 369OOOO. On October 25, 2017, the military judge authorized Al-Nashiri to meet with his counsel in the courtroom. Tr. 10,038-39; AE 369OOOO at 1 n.3. In April 2013, the CDC established a separate email system for defense counsel. See AE 389 at 34. In August 2013, the military judge declined to order JTF-GTMO staff to not monitor future attorney-client communications because he found that there was no evidence that the government had monitored any attorney-client meetings. AE 149K at 4. He explained that JTF-GTMO had a duty to not monitor attorney-client communications, and accordingly, ordering the execution of this existing duty "would be superfluous." Id.
C. Professor Yaroshefsky's Ethics Opinion
Professor Yaroshefsky testified that she presumed that Mr. Kammen's contentions in the Defense Intrusion Allegations (Ex. A to her ethics opinion) were accurate, and she relied upon these facts in rendering her opinion. See Tr. 10,968-71. She based her conclusions, in part, on Mr. Kammen's "assessment" that there was "a significant history of actual and attempted government intrusion into the attorney-client relationships, including the placement of listening devices in attorney-client meeting rooms." Tr. 10,971; AE 389 at 23. Professor Yaroshefsky was also aware that the military judge denied requests for discovery *1202 into the alleged intrusions and that Al-Nashiri's counsel were prohibited from informing Al-Nashiri about classified information relating to the alleged intrusions. AE 389 at 23-24. In her statement of the factual basis for her ethics opinion,[7] Professor Yaroshefsky said:
You [Mr. Kammen] state that "We have no other means by which to assess the level of risk of intrusion into attorney-client confidentiality." You assess that risk to be substantial and ongoing, based upon past practice by the government, (Exhibit A), the evaluation of the Chief Defense Counsel, and classified information within your possession.
Id. at 24; see Tr. 10,998-99.
Professor Yaroshefsky concluded that Mr. Kammen had a mandatory obligation to withdraw as counsel. She said:
The current situation set forth in the facts causes you to violate your duty of communication to your client [because some of the facts related to the intrusions were classified and cannot be shared with Al-Nashiri]. This situation is untenable.
This ethical quandary is profound and not reconcilable with your ethical obligation under the IRPC [Indiana Rules of Professional Conduct] and the MRPC [Model Rules of Professional Conduct] to act diligently and competently, to maintain confidentiality, and adhere to the duties of loyalty and communication.
You cannot, consistent with your ethical obligation continue to represent Mr. al-Nashiri. Rule 1.16(a)(1) of Professional Conduct mandates that you withdraw from representation. It provides that a lawyer "shall withdraw from representation of a client if the representation involves a violation of the rules of professional conduct or other law." You are required to withdraw as his counsel because continued representation will result in a violation of IRPCs and MRPCs 1.1, 1.3, 1.4, and 1.6.[8 ]
AE 389 at 28.
Thus, the predicates for Professor Yaroshefsky's opinion that withdrawal was mandatory were two-fold: (1) the uncertainty regarding security of counsel's communications with Al-Nashiri; and (2) counsel's inability to share classified information with Al-Nashiri. See Tr. 10,998; AE 389 at 23-24. In reaching her conclusions, Professor Yaroshefsky did not address the relationship between a lawyer's duty to inform her client and the lawful restrictions on the dissemination of classified information. See Ind. R. Prof'l Conduct r. 3.4(c) (stating a lawyer shall not "disobey an obligation under the rules of a tribunal") & r. 1.4, cmt. 7 (stating rules *1203 or court orders may require no disclosure of evidence by lawyer to client).
D. The CDC Acts to Terminate SDC's Attorney-Client Relationship with Al-Nashiri
On October 6, 2017, Mr. Kammen, Ms. Spears and Ms. Eliades requested permission from BGen Baker, the CDC at that time, to withdraw from representing Al-Nashiri for ethical reasons.[9] The requests were made separately, but were similar. SDC cited their inability to adhere to three ethical duties as the reasons for their requests for withdrawal: the obligation to provide competent representation; the duty to inform their client regarding the alleged intrusions; and the duty to protect their client's confidences. In support of their requests, the SDC considered several documents, including Professor Yaroshefsky's ethics opinion and classified and unclassified documents. SDC stated that these documents and "facts that I know, both classified and unclassified," establish "extraordinary circumstances ... which prevent me from meeting my obligations under [these ethical] rules."
On October 11, 2017, BGen Baker determined that there was good cause to approve the SDC request to withdraw as defense counsel for Al-Nashiri based "on the distinct circumstances of this case." AE 389 at 18. Accordingly, pursuant to R.M.C. 505(d)(2) he excused SDC as Al-Nashiri's defense counsel. Id. BGen Baker acted on his own authority in doing so.
Two days later, SDC informed the military judge "as a courtesy" that they no longer represented Al-Nashiri. Tr. 10,039; AE 339J; AE 339K; AE 339L. On October 16, 2017, November 3, 2017, and January 19, 2018, the remaining detailed defense counsel, LT Piette, moved to abate the proceedings until the appointment of new learned counsel to represent Al-Nashiri. AE 389; see Tr. 10,040; 10,173; 11,099. The military judge directed briefing on the issue. AE 389A. The military judge suggested that the CDC file a brief "on the issue of his authority unilaterally to excuse Learned Counsel and other Civilian Counsel after they have formed an attorney-client relationship with the Accused and appeared in court on his behalf." Id. at 2. In response, the CDC argued that R.M.C. 505(d)(2)(B) authorized him to excuse counsel of record based upon his finding that good cause existed for excusal. AE 389C at 2-3; AE 389E at 7-8. The CDC further contended that his decisions to release SDC were his alone to make and were not reviewable by the military judge. AE 389C at 5-6, 11; AE 389E at 7-8. The argument put forward by the CDC was focused on his reading of Rule 505(d)(2)(B). See AE 389C; AE 389E.
After considering the matter, the military judge denied the defense motion to abate. AE 389F. He concluded that under relevant law the military judge is required to determine pursuant to R.M.C. 505(d)(2)(B) (2016 ed.) whether there is good cause to permit counsel to terminate an attorney-client relationship.[10] Id. at 4-5. The military judge gave three reasons for reaching these conclusions:
First, [accepting the CDC's claim of authority] removes control of the proceedings from the military judge, as well as *1204 renders impossible the military judge's responsibility to ensure fair and orderly proceedings free of "unnecessary delay or waste of time." See Discussion to R.M.C. 801. Second, it contradicts the established practices of military and civilian courts, which recognize[ ] the judge's sole discretion in determining whether excusal is warranted after counsel has appeared in the case. Likewise, disqualification of counsel based on a breach of ethical duties is well established to be within the discretion of the military judge. Third, while the ambiguity in R.M.C. 505(d)(2)(B) is troublesome, it cannot be read so as to conflict with other provisions within the R.M.C., rendering some superfluous, or read in a way that may directly prejudice the Accused if no judicial oversight is permitted. As such, in conformity with federal and military case law, the Commission is the appropriate authority to determine if good cause is shown on the record to warrant excusal of counsel pursuant to R.M.C. 505(d)(2)(B).
Id. at 5.
The record before us and in the commission does not identify the additional facts or documents that SDC and the CDC claim as support for their requests for excusal. Al-Nashiri's SDC refused to participate in the proceedings and thus did not testify about good cause. See AE 389KK; AE 389LL; AE 389MM; AE 389NN; AE 389RR; AE 389SS; see, e.g. , Tr. 10,041-42; 11,003-04; 11,021; 11,494-95; 12,208-09. The CDC refused to answer questions about the basis for his release of the SDC. Tr. 10,052-10,059, 11,003. Accordingly, more specific information about why SDC and the CDC believed there was good cause warranting termination of the SDC attorney-client relationships with Al-Nashiri was unavailable to the military judge. The facts supporting good cause for any intrusions into Al-Nashiri's attorney-client relationship are not part of the record that is before us. See AE 389F at 5-6 (findings of military judge).
The military judge also said, "thus far no evidence has been presented to demonstrate intrusions in this case affecting this Accused which would ethically require the withdrawal or disqualification of Learned Counsel." Id. In addition, he remarked that "at this stage of the proceedings, the excusal of Learned Counsel [Mr. Kammen], who has acted as lead attorney for the Accused for nine years, will prejudice the Accused's due process rights." Id. at 6.
The military judge further pointed out that under Indiana Rule of Professional Conduct 1.16(c), "[a] lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation." Id. at 6 n.7.
On October 16, 2017, the military judge ruled that the SDC remained counsel of record, and he ordered them to appear at the next scheduled hearing. Tr. 10,040; AE 389A. On October 29, 2017, the CDC told the military judge that SDC would not comply with the military judge's order to appear at the hearing scheduled for the next day. Tr. 10,041-42. Al-Nashiri's detailed counsel again moved for an abeyance until Al-Nashiri could be represented by learned counsel. Tr. 10,042.
On October 31, 2017, CDC attended a pretrial hearing. Tr. 10,052. The military judge ordered him to testify as a witness regarding his decision to terminate SDC's attorney-client relationships with Al-Nashiri. Tr. 10,054-56. BGen Baker refused to testify, citing Military Commission Rule of Evidence 501(b)(1) and several privileges. Tr. 10,054-56; 11,003. He refused to assert any specific privilege *1205 on a question-by-question basis.[11] Id. The military judge ordered BGen Baker to rescind his order purporting to release SDC from representing Al-Nashiri. Tr. 10,056; AE 389M at 3. BGen Baker told the military judge that he would not comply with the commission's order. Tr. 10,057. The military judge replied:
For defense counsel to have the authority stated by the chief defense counsel would effectively give the defense counsel the ability to dismiss any commission case or any criminal case at any stage in the process for any reason when they determine good cause, and then refuse to testify in court to even explain what the good cause shown is, other than what is submitted in written form.
Tr. 10,066.
During the hearing, the military judge ordered BGen Baker to have Al-Nashiri's SDC report to Guantanamo "post-haste." Tr. 10,058-59. Later that day, BGen Baker responded, "I do not believe that a military commission judge has the authority to direct the Chief Defense Counsel to take a specific action with respect [to] those persons he supervises. The Chief Defense Counsel is not part of the enforcement mechanism for a judicial order or the witness production process." AE 389M at 14.
The following day, on November 1, 2017, the military judge found BGen Baker guilty of contempt for his willful refusal to obey the commission's order to testify and for willfully failing to rescind his order ostensibly terminating the attorney-client relationship between SDC and Al-Nashiri. Tr. 10,074-85. The military judge sentenced the CDC to a $ 1,000 fine and confinement in his quarters for twenty-one days. Tr. 10,084. BGen Baker recused himself from further involvement in Al-Nashiri's case. Tr. 10,075; AE 389TT at 27. On November 21, 2017, the convening authority approved the contempt finding of guilty; however, he remitted the unexecuted confinement term and the fine. See Baker v. Spath , No. 17-cv-02311-RCL, 2018 WL 3029140, at *2, 2018 U.S. Dist. LEXIS 101622 at *5 (D.D.C. June 18, 2018).
The military judge ordered the prosecution to issue subpoenas compelling Ms. Spears and Ms. Eliades to appear and testify before the commission at a video teleconference facility in Alexandria, Virginia. AE 389MM & AE 389NN at 3; AE 389RR & AE 389SS at 4; AE 389TT at 10-11; AE 389UU. They opposed compliance with the subpoenas. AE 389MM; AE 389NN; AE 389RR; AE 389SS; see AE 389TT; AE 389UU; AE 389KK; AE 389LL.
Mr. Kammen, Ms. Spears and Ms. Eliades did not appeal to our Court any of the military judge's rulings about the alleged intrusions or the commission's denial of their requests to be excused from representing Al-Nashiri. The defense in this commission case has used the All Writs Act, 28 U.S.C. § 1651(a), to appeal adverse rulings, see In re Al-Nashiri , 791 F.3d 71, 75-78 (D.C. Cir. 2015) (" Al-Nashiri I "), subsequent separate mandamus proceeding , 835 F.3d 110 (D.C. Cir. 2016), but has not done so here. Ms. Spears and Ms. Eliades presented their views in this government appeal of the abatement order as intervenors.
*1206 E. Aftermath of the SDC Refusal to Obey the Commission's Orders to Appear and Represent Al-Nashiri
In the ensuing weeks, the military judge continued the pre-trial proceedings. See, e.g. , Tr. 10,062. Al-Nashiri was represented by detailed defense counsel, LT Piette. During commission sessions, LT Piette did little more than object to all proceedings before the commission on the ground that he was not competent to represent Al-Nashiri in the absence of learned counsel. See, e.g. , Tr. 10,062-63; 10,165; 10,173; 11,097-99; see Tr. 11,500-03; AE 389. The military judge, however, ruled that Al-Nashiri was only entitled to learned counsel to the greatest extent practicable and under the circumstances, it was not practicable for Al-Nashiri to have learned counsel represent him. See Tr. 10,061-63; 10,175-76; 10,260-62; 10,588-90; 11,005-07; 12,257; 12,269-70; 12,277.
Despite these circumstances, the Acting CDC would not detail additional counsel to represent Al-Nashiri. Tr. 11,502. Moreover, he "undetailed" [i.e. withdrew] three field grade senior lawyers who had been designated to assist in the defense of Al-Nashiri but who had not yet established an attorney-client relationship with him. Id. The Acting CDC said that he did this because the learned counsel had authority to determine who would assist in Al-Nashiri's representation. Id. Thus, without assignment of learned counsel first, the Acting CDC would not detail counsel to assist LT Piette in his representation of Al-Nashiri. See Tr. 11,500-03; 11,097-99; AE 389 at 2. He did not cite a regulatory or statutory basis for concluding that he or the learned counsel held this prerogative.
The military judge found that the actions of SDC, the CDC, and the Acting CDC were a deliberate strategy to "de-resource" Al-Nashiri's defense. Tr. 11,480-81. He urged detailed defense counsel "to prepare," "to be competent," and "to be zealous. And so if the choice is you're going to be quiet and that is your decision, that's fine. I believe it's going to be looked at as a trial strategy encouraged and assisted by MCDO." Tr. 11,481. Detailed defense counsel declined to cross-examine several witnesses or object to admission of evidence, "tak[ing] no position, other than to object to the -- these proceedings going forward without learned counsel present." Tr. 11,292; see also 11,307; 11,315; 11,342; 11,386; 11,393; 11,477-78.
F. Al-Nashiri's Views on Release of his SDC
On November 17, 2017, the military judge questioned Al-Nashiri regarding the absence of his SDC. Tr. 11,010. He replied: "I believe [Mr. Kammen] chose to leave this case, and I support him.... All the attorneys are free to have their own opinion, and I support them. In other words, I cannot force anyone to come here." Id.[12]
G. The Military Judge Abates Al-Nashiri's Trial
In a verbal ruling on February 16, 2018, the military judge declared, "I am abating ... these proceedings indefinitely until a superior court orders me to resume." Tr. 12,298. He explained, "We need action from somebody other than me, and we're not getting it.... We're going to continue to spin our wheels and go nowhere until *1207 somebody who owns the process looks in and does something." Tr. 12,296. The military judge continued:
So hopefully somebody is going to take action. I am abating these proceedings indefinitely. I will tell you right now, the reason I'm not dismissing -- I debated it for hours -- I am not rewarding the defense for their clear misbehavior and misconduct. That would be the wrong answer. But I am abating these procedures -- these proceedings indefinitely until a superior court orders me to resume.
And whatever that looks like, either myself or my successor will pick it up and start going. If it is -- the superior court tells me next week, Spath, you abused your discretion, get to work, I'll get to work, or whoever takes my place. Hopefully the appellate court will give us some guidance. Maybe they'll say Lieutenant Piette, you're stuck. Colonel Spath got the law right, you don't get learned counsel if it's not practicable, and it's not practicable. Get to work. And then Lieutenant Piette can sit there and not ask questions from now until we finish the trial.
But that's where we're at. We're done until a superior court tells me to keep going. It can be CMCR [Court of Military Commission Review]. It can be the Washington -- or the District in D.C. They're all superior to me. But that's where we're at. We need action. We need somebody to look at this process. We need somebody to give us direction. I would suggest it sooner than later, but that's where we're at.
Tr. 12,297-98.
In response to our request that the military judge tell us whether he would resume the proceedings if new learned counsel was appointed for Al-Nashiri, the military judge said that he would not. Mil. Comm. J. Resp. (Mar. 26, 2018). That, he said "will not resolve what this Commission views as an existential threat to its ability to bring this case to trial. Those issues include:
(1) The validity of the claimed 'unilateral and unreviewable' authority of the Chief Defense Counsel (CDC) to excuse Defense Counsel after appearance before the Commission; and
(2) The authority of this Commission to issue binding orders and the concomitant duty of those subject to said orders and their supervisors to obey those orders."
Id. The military judge continued,
Mooting the issues of excusal authority and willful disobedience of Commission orders based on appointment of new Learned Counsel will leave unresolved the underlying issues regarding the military judge's authority to ensure continuity of representation by being the sole authority to excuse counsel who have appeared before the Commission and the military judge's ability to enforce judicial orders.
[ ] It is apparent that without the imprimatur of this Honorable Court [of Military Commission Review] (or perhaps that of its superior Federal Circuit Court), the Commission is powerless to move the case forward to a fair, just, and timely disposition as the CDC has given every indication he will continue to exercise his claimed unilateral and unreviewable power to excuse counsel.
Id.
Appellant has informed our Court that on October 27, 2017, the JTF offered additional attorney-client meeting spaces for Al-Nashiri and his legal team that, "like their former space, [were] 'not audio-monitored or recorded, and conversations cannot be overheard by non-participants.' " Status Rep. 2, 6 (Mar. 28, 2018).
Additional facts relating to the following motions: to dismiss for lack of jurisdiction;
*1208 to abstain from acting based on the first-to-file rule; to exclude facts; and to require learned counsel at all stages of the military commission and on appeal are set forth in the discussions of those motions herein.
IV. Standard of Review
We defer to the military judge "under an abuse of discretion standard to the military commission's findings of fact ..., including determinations of credibility," and we review a "purely legal question ... de novo ." United States v. Al-Nashiri , 62 F.Supp.3d 1305, 1306 (CMCR 2014) (per curiam) (first ellipsis in original) (internal quotation marks and citations omitted); see also United States v. Tchibassa , 452 F.3d 918, 924 (D.C. Cir. 2006). We review a military judge's ruling to abate a court-martial for an abuse of discretion. United States v. Wuterich , 67 M.J. 63, 77 (C.A.A.F. 2008) ; United States v. Johnson , 76 M.J. 673, 680 (A.F. Ct. Crim. App. 2017) (citing United States v. Ivey , 55 M.J. 251, 256 (C.A.A.F. 2001) ; United States v. Wright , 75 M.J. 501, 508-09 (A.F. Ct. Crim. App. 2015) ).
"A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." United States v. Ellis , 68 M.J. 341, 344 (C.A.A.F. 2010). In government appeals, we apply the same analysis to the facts as our superior court employs. See United States v. Hallford , 816 F.3d 850, 857-60 (D.C. Cir. 2016) ; United States v. Murdock , 667 F.3d 1302, 1307 (D.C. Cir. 2012) ; United States v. Goddard , 491 F.3d 457, 460, 465 (D.C. Cir. 2007) ; United States v. Yunis , 859 F.2d 953, 958-60, 969-70 (D.C. Cir. 1988) ; United States v. Johnson , 442 F.2d 1239, 1240, 1243-45 (D.C. Cir. 1971). Here, the mixed questions of fact and law include: Was there good cause to sever Al-Nashiri's existing attorney-client relationship; can the military judge overrule the CDC's decision to excuse Al-Nashiri's counsel; and can our court proceed in this appeal without learned counsel representing Al-Nashiri?
V. Jurisdiction
A. Jurisdiction to Decide Government Appeals
Government appeals under the Military Commissions Act are governed by 10 U.S.C. § 950d(a)(1) and (2)[13] and corresponding implementation in the MMC at R.M.C. 908 and at chapter 20-8 of the RTMC (2011 ed.).
We look initially to case law from the Court of Appeals for the District of Columbia Circuit for binding precedent, and then to the Court of Appeals for the Armed Forces and Service Courts of Criminal Appeals for persuasive, non-binding precedent on interpretation of the provisions of the Military Commissions Act.[14]
*1209 See, e.g. , United States v. Ali , 718 F.3d 929, 934 (D.C. Cir. 2013) (finding jurisdiction over interlocutory government appeal under 18 U.S.C. § 3731 of a district court order dismissing one or more counts of an indictment); United States v. Yakou , 428 F.3d 241, 243 (D.C. Cir. 2005) (similar finding). Jurisdictional limitations on government appeals of military commissions in 10 U.S.C. § 950d(a)(1) and (2) are similar to those for government appeals of courts-martial in 10 U.S.C. § 862(a)(1)(A) and (B).[15]
An abeyance order that is "tantamount to [a] dismissal," United States v. True , 28 M.J. 1, 3 (C.M.A. 1989) (quoting United States v. Tranowski , 702 F.2d 668, 670 (7th Cir. 1983) ), is appealable under 10 U.S.C. § 862"where intractability has set in and the direction of a dismissal is imminent," id. at 4. See also Johnson , 76 M.J. at 679-80 (Air Force Court of Criminal Appeals stating, it is "the effect of the order or ruling and whether that effect is tantamount to a termination of the proceedings" that determines appealability under the Uniform Code of Military Justice (UCMJ), Article 62). In True , the military judge ordered the convening authority to provide expert assistance for the defense, and the convening authority refused to comply. 28 M.J. at 2. The Court of Military Appeals concluded that the military judge's order was appealable and remanded the case to the Navy-Marine Corps Court of Military Review. Id. at 4.
In another military case, the Air Force Court of Criminal Appeals found it had jurisdiction to hear the government's UCMJ, Article 62, appeal of an abatement order. United States v. Wright , 75 M.J. 501, 509 (A.F. Ct. Crim. App. 2015) (en banc). The military judge in Wright abated the proceedings until the government provided discovery materials. Id. at 507-08. The Court of Criminal Appeals found that " 'intractability' had set in because the Government had definitively decided it would not produce the responsive correspondence." Id. at 509 (quoting True , 28 M.J. 1 ). The case was remanded for clarification and action consistent with the opinion. Id. at 512.
By way of contrast, in United States v. Harding , the Court of Appeals for the Armed Forces found that the government's UCMJ, Article 62, appeal was not authorized. 63 M.J. 65, 67 (C.A.A.F. 2006). In Harding , the military judge issued a warrant of attachment for medical records and ordered an abeyance of proceedings pending enforcement. Id. at 66. Harding's command supported enforcement of the warrant; however, the Marshal's Service *1210 did not enforce it. Id. at 67. The Court of Appeals for the Armed Forces concluded, "The rulings of the military judge in the present case demonstrate that he is prepared to move forward with the trial if and when the warrant is executed." Id.
On the record before us, intractability has set in and the prosecution of Al-Nashiri will not continue. We hold the military judge's abeyance decision was predicated upon a situation that is intractable, and the abeyance is the "functional equivalent" to dismissal of the charges. See True , 28 M.J. at 2. These circumstances have essentially terminated Al-Nashiri's proceedings and thus the interlocutory government appeal before our Court is proper. See id. ; Wright , 75 M.J. at 509. We have jurisdiction under 10 U.S.C. § 950d to decide this appeal.[16] Al-Nashiri's motion to dismiss this appeal for lack of jurisdiction is denied for the reasons set forth in this opinion.
B. Pendent Jurisdiction
Having decided we have jurisdiction to decide the abeyance issue, we must also determine whether we have jurisdiction to decide the following five issues: (1) Is good cause required before the SDC may be excused from representing Al-Nashiri; (2) Was there good cause to excuse SDC; (3) Is the CDC's decision to excuse SDC reviewable by the military judge or our Court; (4) Are SDC obligated to comply with the military judge's order to continue representation of Al-Nashiri; and (5) Can capital litigation proceed without learned counsel?
The D.C. Circuit has explained the scope of pendant jurisdiction as follows:
A court exercises pendent jurisdiction when, while reviewing an order over which it has appellate jurisdiction, it entertains an appeal from another order that, although part of the same case or controversy, would not otherwise be within its jurisdiction. 13 Wright & Miller, Federal Practice and Procedure § 3523. Our court does not exercise pendent appellate jurisdiction frequently or liberally, see Gilda Marx, Inc. v. Wildwood Exercise, Inc ., 318 U.S. App. D.C. 109, 85 F.3d 675, 678 (D.C. Cir. 1996) [per curiam], but it generally will invoke pendent jurisdiction in two circumstances: (1) "when substantial considerations of fairness or efficiency demand it," id. at 679, such as when a nonappealable order is "inextricably intertwined" with an appealable order, id. , or (2) when review of the former decision is "necessary to ensure meaningful review of the latter." Id. (quoting Swint v. Chambers County Comm'n , 514 U.S. 35, 51, 115 S.Ct. 1203, 1212, 131 L.Ed.2d 60 (1995) ).
Nat'l R.R. Passenger Corp. v. ExpressTrak, L.L.C. , 330 F.3d 523, 527 (D.C. Cir. 2003) ; see also *1211 Clinton v. Jones , 520 U.S. 681, 707 n.41, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997) (concluding that jurisdiction was proper where matters were "inextricably intertwined" (citation omitted) ); Rendall-Speranza v. Nassim , 107 F.3d 913, 917 (D.C. Cir. 1997) (stating that pendent jurisdiction is "favored" when matters are "inextricably intertwined" or pendent review "will likely terminate the entire case," providing a "speedy resolution" and saving judicial resources (citations omitted) ).
Notwithstanding this grant of discretionary authority, an appellate "court exercises pendent appellate jurisdiction sparingly." Gilda Marx , 85 F.3d at 678. In this instance, we must ensure either that the additional issues the appeal presents are "inextricably intertwined" with the appealable abatement order, or that review of the additional issues is "necessary to ensure meaningful review of the" abatement order. Id. at 679 (citation omitted).
Al-Nashiri contends there was good cause for the CDC to excuse SDC from representing him because of ongoing intrusions into his communications with his counsel. Appellee Br. (July 2, 2018). Al-Nashiri requests that we order a hearing under United States v. DuBay , 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967) (per curiam), based upon his allegations that the United States intruded into his attorney-client communications. Appellee Br. at 2, 5-6 (July 2, 2018). Appellant counters that the existence of good cause to withdraw as counsel is irrelevant because the issue is whether the proper authority excused SDC. See Appellant Br. at 3-8 (July 23, 2018). Appellant argues that the military judge is the excusal authority for counsel who have appeared before the military commission. Id. at 3.
The sole basis for SDC's requests to cease representing Al-Nashiri, and the singular reason for the CDC's finding of good cause for their excusal directly relates to their determinations that the government was intruding into Al-Nashiri's attorney-client relationship. When the D.C. Circuit was considering intervenors' claims about the government intrusions, it ordered extensive discovery into these allegations. App. A to App. A.
We have pendent jurisdiction over the five issues. All five issues are "inextricably intertwined" with the abatement order, and we must address each issue to ensure meaningful review of the abatement order. Nat'l R.R. , 330 F.3d at 527 (citation omitted). Al-Nashiri claims that intrusions are the good cause basis for SDC's withdrawal from representation of him; thus, we must review the record to determine the validity of his intrusion claim.
VI. Abstention Based on the First-to-File Rule
Al-Nashiri urges us not to act on this appeal because Mr. Kammen and the CDC first filed for relief in the district courts for the District of Columbia and the Southern District of Indiana. Appellee Br. (Mar. 9, 2018); Appellee Br. 23 n.3 (Mar. 15, 2018). "Considerations of comity and orderly administration of justice dictate that two courts of equal authority should not hear the same case simultaneously." Wash. Metro. Area Transit Auth. v. Ragonese , 617 F.2d 828, 830 (D.C. Cir. 1980). "[T]he doctrine of federal comity, [is] a discretionary doctrine which permits one district to decline judgment on an issue which is properly before another district." Church of Scientology of Cal. v. U.S. Dept. of Army , 611 F.2d 738, 749 (9th Cir. 1979) ; see also Great N. Ry. Co. v. Nat'l R.R. Adjustment Bd. , 422 F.2d 1187, 1193 (7th Cir. 1970) ("The purposes of the rule [on comity] are to avoid unnecessarily burdening courts and to avoid possible embarrassment from conflicting results.").
While some jurisdictions determine which court should try a case by using the first-to-file rule, the D.C. Circuit *1212 has "emphasized that the district court must balance equitable considerations rather than using [ ] 'a mechanical rule of thumb.' " Handy v. Shaw, Bransford, Veilleux & Roth , 325 F.3d 346, 349 (D.C. Cir. 2003) (quoting Columbia Plaza Corp. v. Sec. Nat'l Bank , 525 F.2d 620, 628 (D.C. Cir. 1975) ); see also Wise v. United States , 128 F.Supp.3d 311, 318 (D.D.C. 2015) (listing equitable considerations that "may lead a court to depart from the usual application of the first-to-file rule" (citing Stone & Webster, Inc. v. Ga. Power Co. , 965 F.Supp.2d 56 (D.D.C. 2013), aff'd 779 F.3d 614 (D.C. Cir. 2015) ) ); United States v. Harvey , 791 F.2d 294, 304 (4th Cir. 1986) (directing transfer of motion to enforce a Virginia plea agreement to South Carolina where appellant faced a new trial on remand because South Carolina was familiar with relationship between both prosecutions).
A. Litigation in the District Court for the District of Colombia
On November 2, 2017, the CDC challenged the military judge's contempt citation against him in the District Court for the District of Columbia. Baker , 2018 WL 3029140, at *1-2, 2018 U.S. Dist. LEXIS 101622, at *4-6. The military judge issued the contempt citation because the CDC refused to obey the military judge's order to rescind the CDC's prior order that ostensibly released Al-Nashiri's three counsel from representing Al-Nashiri. Id. at *1, 2018 U.S. Dist. LEXIS 101622, at *3. The CDC also challenged his criminal contempt conviction in a habeas action. Id. at *1, *2-3, 2018 U.S. Dist. LEXIS 101622, at *1, *5-7.
The district court held that the military judge lacked authority to hold BGen Baker in contempt. Id. at *13 & n.4, 2018 U.S. Dist. LEXIS 101622, at *40 & n.4. The district court explained that "[ 10 U.S.C. §] 949m(a) requires that all convictions for any Chapter 47A offense be by vote of the [primary] members of the commission," thus making "clear that summary, unilateral contempt convictions carried out by military judges are impermissible." Id.
B. Litigation in the District Court for the Southern District of Indiana
Learned counsel, Mr. Kammen, asked the district court to enjoin his involuntary recall to represent Al-Nashiri. Appellee Br. 2 (Mar. 9, 2018) (citing Kammen v. Mattis , No. 1:17-cv-03951 (S.D. Ind. filed Nov. 2, 2017) ). He also sought a declaratory judgment that the CDC "had the authority to excuse him from the case" and that he had "good cause" to withdraw. Id. The district court granted Mr. Kammen's requested temporary restraining order the next day. Kammen v. Mattis, No. 1:17-cv-03951-TWP-DML, 2017 U.S. Dist. LEXIS 182533, at *2 (S.D. Ind. Nov. 3, 2017). The court held in abeyance any writ of attachment or warrant for Mr. Kammen's appearance before the military commission, until a hearing on the merits. Id.[17]
On February 16, 2018, Mr. Kammen filed an "Amended Petition for Writ of Habeas Corpus and Motion for Declaratory Judgment" in the district court, discussing the intrusion issues, Mr. Kammen's ethical basis for withdrawal, and the CDC's claim of unilateral authority to grant excusal. Am. Pet. for Writ of Habeas *1213 Corpus & Mot. for Decl. J. 10-30 (S.D. Ind. filed Feb. 16, 2018). Mr. Kammen's Prayers for Relief are as follows:
1. Hold an evidentiary hearing that would include an examination of all the relevant evidence, both classified and unclassified. At the conclusion of the hearing, issue a writ of habeas corpus ordering that Mr. Kammen be released from Col. Spath's unlawful order to appear as counsel and released from any detention;
2. Issue a declaration specifying that a military commission tribunal cannot hold Mr. Kammen, a United States citizen and non-combatant, without explicit statutory authorization and declaring that any further orders purporting to compel Mr. Kammen to render legal services in conjunction with U.S. v. Nashiri , at any location, are illegal and null and void.
[3]. Order other such relief as this Court deems proper and just.
Id. at 47. The district court granted Mr. Kammen's Motion to Amend Petition for Writ of Habeas Corpus and Motion for Declaratory Judgment. Kammen , No. 1:17-cv-03951-TWP-DML, Order, doc. 32 (S.D. Ind. Apr. 4, 2018). As of the date of this decision, the district court had not held a hearing on the merits or issued an order addressing Mr. Kammen's prayers for relief.
In 2016, the Court of Appeals for the District of Columbia Circuit concluded that the direction in Schlesinger v. Councilman , 420 U.S. 738, 756-58, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975), to generally refrain from enjoining courts-martial, applied equally to military commissions. In re Nashiri , 835 F.3d 110, 118-28 (D.C. Cir. 2016) ; see also Hennis v. Hemlick , 666 F.3d 270, 274 n.5 (4th Cir. 2012) ("[T]he Supreme Court [in Councilman ] extended Younger [v. Harris , 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) ] abstention to restrict federal court intervention into on-going court-martial proceedings."). The D.C. Circuit Court held in In re Nashiri that the district court properly decided to decline adjudication of the merits of Al-Nashiri's claim for habeas relief. 835 F.3d at 118.
Here, we do not know whether the District Court for the Southern District of Indiana will adjudicate the merits of the same issues we address in this decision, and even if it does, whether the district court's decision would result in a holding different from our Court on those issues. We do know that we are required to expeditiously address this appeal under 10 U.S.C. § 950d. Al-Nashiri's Motion to Dismiss under the First-Filed Rule (abstention motion) is denied.
VII. Excusal of Al-Nashiri's SDC
A. The Manual for Military Commissions (MMC), Regulation for Trial by Military Commission (RTMC), and Rules of Court (RC) Provisions on Excusing Defense Counsel
The Secretary of Defense has authority to prescribe rules for trial by military commissions. 10 U.S.C. § 949a(a). The Secretary has promulgated the MMC and RTMC. If there is a conflict between the MMC and the RTMC, the MMC takes precedence. RTMC ¶ 1-1a (2011 ed.).
The CDC is the detailing authority for Al-Nashiri's civilian defense counsel and learned counsel. RTMC ¶ 9-1a.5, 9-1a.6.[18] R.M.C. 505(d)(2)(B) addresses changes in detailed defense counsel after formation of an attorney-client relationship, as follows:
*1214 After an attorney-client relationship has been formed between the accused and detailed defense counsel or associate or assistant defense counsel, an authority competent to detail such counsel may excuse or change such counsel only:
(i) Upon request of the accused or application for withdrawal by such counsel; or
(ii) For other good cause shown on the record.
R.M.C. 505(f) states:
For purposes of this rule, "good cause" includes physical disability, military exigency, and other extraordinary circumstances which render the member, counsel, or military judge unable to proceed with the military commission within a reasonable time. "Good cause" does not include temporary inconveniences which are incident to normal conditions of military life.
(Emphasis added.) Under this regulatory scheme, the detailing authority, in this case the CDC, determines in his judgment whether to excuse counsel.
The 2016 Manual for Courts-Martial, Rule for Courts-Martial ( R.C.M.) 505(d) (2)(B)(i)-(ii) is substantially the same as the excusal provisions in R.M.C. 505(d)(2)(B)(i)-(ii).[19]
Here, the CDC views himself as an agency official under the executive branch whose interpretation of the excusal provisions in the MMC are binding on the military judge. In the interpretation of the MMC, however, for "matters within the normal purview of military courts, all military judges are competent to interpret them and do not afford any deference to an agency interpretation. For matters within the normal purview of military courts, it is interpretation by appellate courts, not agency representatives, to which military judges must defer." Johnson , 76 M.J. at 683. "[I]t does not matter whether the agency interpretation is from a trial counsel, the head of a Military Justice Division, or The Judge Advocate General." Id.
R.M.C. 108 authorizes the Chief Trial Judge for Military Commissions to make rules of court that are not inconsistent with the R.M.C. Military Commissions Trial Judiciary (Mil. Comm. Trial Jud.), Rule of Court (RC) 4.2.a(3) (Sept. 1, 2016), states, "If detailed military counsel makes an appearance before a Military Judge, excusal must be approved by the Military Judge. (See RC 4.4.b.)." RC 4.4.a-b defines the process for withdrawal, excusal, and relief of "detailed GS civilian defense counsel," Ms. Spears and Ms. Eliades, and "qualified civilian counsel," Mr. Kammen, after entering an appearance and after arraignment. "GS civilian defense counsel" and "detailed civilian defense counsel" must obtain approval from the military judge for excusal and release as counsel after making an appearance. RC 4.2.b-c. RC 4.4.b reiterates, "A defense counsel who has entered an appearance in a Commission session will not be excused without permission of the Military Judge. (See also RC 4.2.a and RC 4.2.b)." The term "defense counsel" in RC 4.4.b encompasses Al-Nashiri's SDC. Accordingly, the military judge is the approval authority for excusal of Al-Nashiri's learned counsel and federal government employed counsel and *1215 for termination of their attorney-client relationship with Al-Nashiri after appearance. RC 4.2.a(3), 4.2.b, 4.2.c, 4.4.b.[20]
B. Military Case Law on Excusing Defense Counsel
Military case law under the UCMJ has long held that release of defense counsel from representation after formation of an attorney-client relationship will receive close scrutiny at the trial and appellate levels. See, e.g. , United States v. Hutchins , 69 M.J. 282, 293 (C.A.A.F. 2011) (holding counsel's separation from active duty was "invalid basis" for termination of attorney-client relationship); United States v. Acton , 38 M.J. 330, 337 (C.M.A. 1993) (noting "defense counsel may be excused only with the express consent of the accused, or by the military judge upon application for withdrawal by the defense counsel for good cause shown" (quoting R.C.M. 506(c) ); United States v. Baca , 27 M.J. 110, 118 (C.M.A. 1988) (holding that "existing attorney-client relationship [of five months] cannot be terminated without the accused's consent merely for the convenience of the Government"); United States v. Kelly , 16 M.J. 244, 246-47 (C.M.A. 1983) (considering good cause to terminate based on scope and timing of representation); United States v. Iverson , 5 M.J. 440, 444 (C.M.A 1978) (concluding termination of "established attorney-client relationship" for post-trial representation improper when based on administrative convenience of service and without appellant's consent); United States v. Eason , 21 U.S.C.M.A. 335, 337, 45 C.M.R. 109, 111 (1972) (concluding that withdrawal and re-referral of charges for stateside disposition based on administrative convenience of service did not validly terminate "established attorney-client relationship"); United States v. Cutting , 14 U.S.C.M.A. 347, 350, 351-52, 34 C.M.R. 127, 131-32 (1964) (ordering rehearing where appellant's requests for counsel were not presented to appropriate decision authorities and lack of "free-will" in day-of-trial election to proceed without attorney); United States v. Vanderpool , 4 U.S.C.M.A. 561, 565, 16 C.M.R. 135, 139 (1954) (discussing whether denial of continuance for review of unavailability determination as to requested counsel was denial of counsel and thus voided jurisdiction).
In courts-martial cases, the military judge is required under R.C.M. 505(d) (2)(B) and 813(c) to ensure "that the record sets forth the basis for the good cause determination." United States v. Hohman , 70 M.J. 98, 99 (C.A.A.F. 2011) (per curiam) (quoting Hutchins , 69 M.J. at 291 ); see also United States v. Catt , 1 M.J. 41, 48 (C.M.A. 1975) (stating same); United States v. Phillips , 56 M.J. 771, 775 (C.G. Ct. Crim. App. 2002) (citing multiple cases and stating good cause must be shown).
Under the regulatory structure in the MMC, the detailing authority, in this case the CDC, makes the initial determination whether in his judgment there is good cause to excuse counsel. See R.M.C. 505(d)(2)(B). He then must present his decision and the basis for it to the military judge who is required to do two things. First, the military judge must ensure that there is a factual basis for the CDC's decision to excuse counsel, and that it is set forth on the record. See *1216 Hutchins , 69 M.J. at 291. Second, the military judge must find as a matter of law that good cause has been established to excuse counsel. See Hohman , 70 M.J. at 99.
This process is not controversial. It has long been the law of the military court system. The Coast Guard Court of Military Review observed:
Although R.C.M. 505 indicates that these actions may be taken by the authority who details counsel, we believe that after the trial commences it is only the military judge who may sever the attorney-client relationship, except in the limited circumstance under R.C.M. 506(b) (3).
... [W]e believe the military judge, not the staff judge advocate, is the appropriate authority to effect such action. This outlook is consistent with the view that the military judge controls the trial proceedings and ensures that the rights of the accused are protected.
United States v. Bevacqua , 37 M.J. 996, 1001-1002 (C.G.C.M.R. 1993) ; see United States v. Blaney , 50 M.J. 533, 540 (A.F. Ct. Crim. App. 1999) (finding withdrawal letter from counsel who appellant desired for continued representation "was no more than an application for withdrawal subject to approval by the military judge"). Further, "severing the attorney-client relationship should be accomplished only after good cause has been established upon a full airing of the issue on the record." Bevacqua , 37 M.J. at 1002.
Case law under the UCMJ also recognizes that conflicts of interest or a breach of ethical duties may raise ethical issues that establish good cause for disqualification of counsel. See United States v. Humpherys , 57 M.J. 83, 88-89 (C.A.A.F. 2002) (finding no abuse of discretion in denial of a disqualification motion based on assistant trial counsel's prior representation of appellant); United States v. Strother , 60 M.J. 476, 478, 484 (C.A.A.F. 2005) (finding no abuse of discretion in denial of disqualification motion based on attorney who assisted Article 32 investigating officer and then served as trial counsel on same case). Thus, SDC had some basis for their applications for excusal.
The CDC and SDC's assertion, however, that the applicable rules entitle the CDC to unilaterally excuse defense counsel for good cause after appearance on behalf of an accused, without review or approval by the courts, lacks merit. Not only does this claim have no basis in law but it is contradicted by settled law. After good cause is shown on the record, defense counsel also must secure approval of the military judge before they are excused and released as counsel. See RC 4.2.a(3), 4.2.b, 4.2.c, 4.4.b. These RC provisions are in addition to the provisions for excusal of defense counsel under R.M.C. 505(d)(2)(B).
C. Article III Courts Excusal of Defense Counsel
"As a fundamental premise, counsel is under an obligation to see their legal representation through to completion once [he or] she initiates the attorney client relationship. The decision to grant or deny counsel's motion to withdraw is committed to the discretion of the district court." Thorpe v. United States , 445 F.Supp.2d 18, 22 (D.D.C. 2006) (citation omitted); see also United States v. Williams , 717 F.2d 473, 475 (9th Cir. 1983) ; Laster v. District of Columbia , 460 F.Supp.2d 111, 113 (D.D.C. 2006) (citing Whiting v. Lacara , 187 F.3d 317, 320 (2d Cir. 1999) ); Fleming v. Harris , 39 F.3d 905, 908 (8th Cir. 1994) ; United States v. Mullen , 32 F.3d 891, 895 (4th Cir. 1994) ; Washington v. Sherwin Real Estate, Inc. , 694 F.2d 1081, 1087 (7th Cir. 1982). Appointed counsel "should not seek to be excused from undertaking the representation except for compelling reasons."
*1217 United States v. O'Connor , 650 F.3d 839, 851-52 (2d Cir. 2011) ; see D.D.C. L. Crim. R. 44.5(d) (2018) ("The Court may deny a motion to withdraw if the attorney's withdrawal would unduly delay trial of the case or be unfairly prejudicial to any party, or otherwise not be in the interests of justice."); S.D. Ind. L. Crim. R. 83-7(c) ("Withdrawal of Appearance. (1) An attorney must file a written motion to withdraw his or her appearance.").
There are limits to a district court judge's discretion to order a defense counsel to continue to represent a defendant against counsel's wishes. See United States v. Oberoi , 331 F.3d 44 (2d Cir. 2003), rev'd on other grounds , 379 Fed. App'x 87 (2d Cir. 2010). In Oberoi , the defense counsel asked to withdraw because he did not want to cross-examine a former client. Id. at 47. The Second Circuit stated, "[I]f forcing an attorney to continue representation will cause a violation of the Code of Professional Responsibility and possibly subject the attorney to sanctions, it will be an abuse of discretion not to grant the motion to withdraw." Id. at 47-48. The Second Circuit "vacated the district court's denial of the Defender's motion to withdraw and remanded for appointment of new counsel." Id. at 52. The court reasoned that the "Defender's interpretation [of a New York Disciplinary Rule concerning conflicts between clients] is plausible and, as one commentator points out, there are sound policy reasons for refusing to allow a criminal defendant to consent to the use of his secrets and confidences to his disadvantage." Id. at 48 ; see also United States v. Blackledge , 751 F.3d 188, 198-99 (4th Cir. 2014) (holding the record was inadequate to support denial of appointed counsel's excusal request that was based on a conflict with a client).
When an attorney requests to be excused in a client-conflict situation, denying that request is particularly perilous. In order to protect the rights of a current client, a defense counsel may be required to cross-examine a former client and utilize privileged information or the product of defense counsel's investigation regarding the former client. The former client may not fully understand these and other pitfalls of waiving conflict of interest. The case before us, however, is not a case of client-conflict, and thus Oberoi and Blackledge are inapposite.
D. Professional Responsibility Rules in the Department of Defense and States of Licensure for the Three Civilian Counsel
The SDC contend that their state rules of professional responsibility require them to withdraw from representing Al-Nashiri. AE 339J, AE 339K & AE 339L at 6. Professional responsibility rules for defense counsel appearing before military commissions are addressed in R.M.C. 109(b)(3), which states:
Recognizing the specialized nature of military commissions and military commissions practice the following principles and procedures shall apply to trials by military commission under chapter 47A of title 10, United States Code, and this Manual:
(A) In effecting a choice of law between the professional responsibility rules of a counsel's licensing jurisdiction and the rules, regulations, and instructions applicable to trials by military commission, the latter shall be considered paramount, unless such consideration is expressly forbidden by the rules of a counsel's licensing jurisdiction.
* * * *
(B) Military commissions shall be deemed a "court," "forum," or "tribunal" for the purposes of construing any choice of law provision in the professional responsibility rules of a counsel's licensing jurisdiction that defers to the rules of a court, tribunal, or other forum.
*1218 The DoD does not have detailed ethical rules pertaining to the termination of representation before tribunals; however, the ethical rules for the Army, Navy (and Marine Corps), and Air Force provide persuasive guidance. The service ethical rules apply to courts-martial and representation before other tribunals. See Army Reg. 27-26, Legal Services, Rules of Professional Conduct for Lawyers, at i (June 28, 2018) [hereinafter AR 27-26]; Navy JAGINST 5803-1E, Professional Conduct of Attorneys Practicing under the Cognizance and Supervision of The Judge Advocate General, ¶ 4 (Jan. 20, 2015) [hereinafter Navy JAGINST 5803-1E]; A.F. Guidance Mem. for A.F. Instr. 51-110, Professional Responsibility Program (Aug. 5, 2014), at 3 (May 15, 2018) [hereinafter AFGM-AFI 51-110]. Service ethical rules require counsel to continue representation when ordered to do so by the tribunal or other competent authority, notwithstanding good cause for terminating the representation. See Army Reg. 27-26, r. 1.16(c)-(d); Army Reg. 27-10, Legal Services, Military Justice, ¶ 6-9 (May 11, 2016); Navy JAGINST 5803-1E, r. 1.16.c-d; AFGM-AFI 51-110, r. 1.16(c)-(d).
Mr. Kammen and Ms. Spears are licensed to practice law in Indiana. AE 339J & AE 339L at 6. Ms. Eliades is licensed to practice law in Illinois. AE 339K at 6. On December 23, 2008, Mr. Kammen signed an affidavit agreeing to comply with all applicable regulations and rules for counsel appearing before the military commissions, including any rules of court. AE 389 at 9-15. Mr. Kammen was "contractually appointed" to represent Al-Nashiri, whereas Ms. Spears and Ms. Eliades were detailed as "assistant defense counsel" to represent him. See AE 389D at 11-15 (discussing interplay among R.M.C. 505(d)(2)(d)(7), and RTMC, ch. 9). Ms. Spears and Ms. Eliades contended that as civilian assistant defense counsel they are not required under the Rules of Court to seek the military judge's permission to withdraw. See AE 389KK & AE 389LL at 5-7 (citing RC 4.2.a.3, 4.2.c (requiring military judge's approval for excusal of military counsel and civilian defense counsel who make an appearance before a military judge); RC 4.2.e (including "no comparable requirement for assistant defense counsel") ).
The Illinois Rules of Professional Conduct of 2010, Rule 1.16, Declining or Terminating Representation, provides:
(c) A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.
(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, [and] allowing time for employment of other counsel ....
See also Ind. R. of Prof'l Conduct r. 1.16(c)-(d) (stating same verbatim). The comments to Illinois Rule 1.16 and Indiana Rule 1.16 are the same and state, "When a lawyer has been appointed to represent a client, withdrawal ordinarily requires approval of the appointing authority. See also Rule 6.2. Similarly, court approval or notice to the court is often required by applicable law before a lawyer withdraws from pending litigation...." Id. at r. 1.16 cmt. [3]; Ill. R. of Prof'l Conduct r. 1.16 cmt. [3]. In Indiana state courts, "[a] motion for withdrawal of representation shall be granted by the court unless the court specifically finds that withdrawal is not reasonable or consistent with the efficient administration of justice." Ind. R. of Trial P. 3.1(H)(2).
*1219 E. Conclusion on Excusal of Al-Nashiri's SDC
Al-Nashiri asserts the military judge failed to consider a series of intrusions extending over several years. See Appellant Br. 1-2 (July 16, 2018). He also contends that the military judge erroneously relied on Weatherford v. Bursey , 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), and thus applied the wrong standard for relief; that is, intrusion and prejudice.[21] Id. at 13. Al-Nashiri urged relief without evidence of prejudice, citing Caldwell v. United States , 205 F.2d 879 (D.C. Cir. 1953), and Coplon v. United States , 191 F.2d 749 (D.C. Cir. 1951). Id. at 13-15.
The government made an unequivocal representation to the military judge that it did not intrude into Al-Nashiri's privileged communications with his attorneys. Wells Decl. ¶¶ 15-16, 19 & n.13, 23-24. The military judge stated, "[N]o evidence has yet been presented to demonstrate intrusions in this case affecting this accused which would ethically require withdrawal or disqualification of outside appointed learned counsel." Appellant Br. 8 (July 23, 2018) (alterations in original) (quoting Tr. 10,025). Moreover, even if there was evidence of an intrusion into Al-Nashiri's attorney-client relationship, there also must be evidence of prejudice before relief may be granted.[22]
Our superior Court has relied on Weatherford and its progeny to question the continued vitality of the per se rule in Caldwell and Coplon . See United States v. Kelly , 790 F.2d 130, 136-37 (D.C. Cir. 1986). The D.C. Circuit concluded that "some prejudice must be shown as an element of a sixth amendment violation." Id. at 137 (citing Weatherford ). In reaching this conclusion, the Court noted widespread acceptance of the four factors that sprang from Weatherford , which are used to consider whether a Sixth Amendment violation due to intrusions has been established. Id. These four factors are:
(1) was evidence used at trial produced directly or indirectly by the intrusion; (2) was the intrusion by the government intentional; (3) did the prosecution receive otherwise confidential information about trial preparations or defense strategy as a result of the intrusion; and (4) were the overheard conversations and other information used in any other way to the substantial detriment of the defendant?
Id. ; see also United States v. Pinson , 54 M.J. 692, 696 (A.F. Ct. Crim. App. 2001) (citing four factors).
Before considering the issue of prejudice, however, there must first be evidence of an intrusion into the relationship between Al-Nashiri and his counsel. No such evidence has been presented to-date. We have no evidence the prosecution received or attempted to receive any of Al-Nashiri's attorney-client strategy or communications. See AE 389F at 5-6. Of course, the door is not closed to Al-Nashiri on this issue. If his defense counsel obtain and *1220 present such evidence, the military judge should make findings and consider an appropriate remedy.
Regarding authority over SDC excusal, the military judge ruled that the CDC had no authority to excuse Mr. Kammen, which if permitted ostensibly would allow the CDC to unilaterally terminate Mr. Kammen's attorney-client relationship with Al-Nashiri. See id. The CDC does not have this authority. Rather, after counsel has appeared, the military judge "is the appropriate authority to determine if good cause is shown on the record to warrant excusal of counsel pursuant to R.M.C. 505(d)(2)(B)." Id. at 5. The military judge ordered Mr. Kammen to appear and continue to represent Al-Nashiri. AE 389A ¶ 2; Tr. 10,040. Mr. Kammen was obligated to comply with the military judge's ruling.
As the Supreme Court held in a dispute regarding whom between the legislative and the executive, as opposed to the judiciary, determines legal rights: "To hold the political branches have the power to switch the Constitution on or off at will ... [would] lead[ ] to a regime in which Congress and the President, not this Court, say 'what the law is.' Marbury v. Madison, 5 U.S. 1 Cranch 137, 2 L.Ed. 60 (1803)." Boumediene v. Bush , 553 U.S. 723, 765, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008) ; see also Montana v. Clark , 749 F.2d 740, 745 (D.C. Cir. 1984) ("Beyond question, it is the unique province of the judiciary to 'say what the law is,' Marbury v. Madison , 5 U.S. (1 Cranch) 137, 177-178, 2 L.Ed. 60 (1803)."). This Supreme Court ruling applies equally here, meaning the military judge in Al-Nashiri's military commission proceedings has the authority to "say what the law is."
Mr. Kammen also was required to obey the military judge's orders to continue as Al-Nashiri's counsel notwithstanding his disagreement with the orders on ethical grounds. "While attorneys are advocates, they are also officers of the court. Their duty to their clients cannot override their duty to respect the system of justice, including court rules and orders." Wagner v. Williford , 804 F.2d 1012, 1017-18 (7th Cir. 1986) ; see also Steinle v. Warren , 765 F.2d 95, 101 (7th Cir. 1985) (Counsel "is an officer of the court and [ ] his duty to the court is paramount, even to the interests of his client.... [C]onduct[ ] in total disregard for this duty cannot be countenanced."); United States v. Moncier , 571 F.3d 593, 599 (6th Cir. 2009) ("Lawyers are required to obey even incorrect orders; the remedy is on appeal." (citation omitted) ).
Mr. Kammen did not secure a ruling from the military judge that the CDC's decision to terminate his attorney-client relationship with Al-Nashiri was based on good cause involving "extraordinary circumstances" as defined by R.M.C. 505(f). He served as Al-Nashiri's learned counsel for nine years, was paid about $ 180 an hour, and received almost two million dollars of DoD funds for his representation. Tr. 10,584; 10,735. Further, Mr. Kammen did not secure the military judge's approval to withdraw even had there been a good cause finding. He was obligated to obtain the military judge's permission to withdraw. We conclude that Mr. Kammen remains counsel of record. Accordingly, he has a legal and ethical duty to resume representation of Al-Nashiri.
VIII. Al-Nashiri's Right to Learned Counsel
Al-Nashiri objected to the absence of learned counsel to assist in the litigation of this appeal.[23] Appellee Br. 23, 26-28 *1221 (Mar. 15, 2018). We granted a delay for Commander (CDR) Brian Mizer, U.S. Navy, to file a supplemental brief in this case. CMCR Order (May 23, 2018). CDR Mizer is an experienced appellate attorney, who represented Al-Nashiri on a prior active duty tour from 2013 to 2015. Appellee Br. 1-3 (Apr. 19, 2018). He represented Al-Nashiri as one of several appellate counsel. See United States v. Al-Nashiri, 191 F.Supp.3d 1308, 1311 (CMCR 2016) (concerning pretrial decision to dismiss charges for lack of subject-matter jurisdiction); Al-Nashiri , 62 F.Supp.3d at 1305-06 (concerning motion to dismiss appellant's interlocutory appeal). Presently, CDR Mizer's "primary responsibility is providing learned counsel to airmen with an adjudged sentence of death on direct appeal." Appellee Br. Attach. A, Mizer Decl. ¶ 2 (May 22, 2018). The military judge described CDR Mizer as a learned counsel and said he believed CDR Mizer qualified as such.[24] Tr. 11,011; see Tr. 11,098-99; 11,104. The military judge ordered the convening authority to take action to return CDR Mizer to active duty so that CDR Mizer could represent Al-Nashiri as learned counsel. Tr. 11,011.
We will briefly discuss the issue of providing learned counsel to Al-Nashiri. The Military Commissions Act states an accused has the right to learned counsel, as follows: "When any of the charges sworn against the accused are capital, to be represented before a military commission in accordance with clause (i) [concerning non-capital charges] and, to the greatest extent practicable , by at least one additional counsel who is learned in applicable law relating to capital cases ...." 10 U.S.C. § 949a(b)(2)(C)(ii) (emphasis added); see also United States v. Hennis , 77 M.J. 7, 9 (C.A.A.F. 2017) ("We recognize that the Military Justice Act of 2016 substantially amends Article 70, UCMJ, by requiring '[t]o the greatest extent practicable, in any capital case, at least one defense counsel ... be learned in the law.' " (citation omitted) ). R.M.C. 506(b) states:
Capital Offenses. In any case in which ... the convening authority refers a charge to a capital military commission, the accused has the right to be represented in accordance with section (a) above [concerning general right to counsel], and by at least one additional counsel who is learned in applicable law relating to capital cases.... Such appointment of learned counsel shall be in accordance with regulations prescribed by the Secretary of Defense....
See also RTMC ¶ 9-1.a.6 (2016 ed.).
We conclude that Al-Nashiri's right to learned counsel is defined by 10 U.S.C. § 949a(b)(2)(C)(ii) and is only permitted *1222 to the "greatest extent practicable." That "language makes plain that there is no statutory requirement for learned counsel." Hennis , 77 M.J. at 9. Thus, the statutory right to learned counsel is not absolute. To the degree that R.M.C. 506(b) and RTMC ¶ 9-1.a.6 are read to expand what 10 U.S.C. § 949a(b)(2)(C)(ii) requires, they exceed the rule-making authority granted by Congress to the Secretary of Defense in 10 U.S.C. § 949a(a). The Secretary's authority is limited to promulgating rules that are "not ... contrary to or inconsistent with this chapter." 10 U.S.C. § 949a(a). Any expansion of the right to learned counsel in R.M.C. 506(b) and RTMC ¶ 9-1.a.6 to an absolute right, as Al-Nashiri argues, is both "contrary to [and] inconsistent with" the limited right established by 10 U.S.C. § 949a(b)(2)(C)(ii). Id.
While there may not be an absolute right to learned counsel, the right to learned counsel in a military commission case should not be abridged absent unusual circumstances. The term "practicable" is not defined. In an assessment of practicality, our Court and the military commission must consider: (1) whether the proceeding is at a "critical stage," see Bell , 795 F.3d at 95 ; (2) the qualifications of the lawyer(s) who represent the accused in the absence of learned counsel, see ABA Guideline 5.1; (3) the amount of delay caused, or likely to be caused, by the absence of learned counsel, see Seale , 461 F.2d at 371 ; D.D.C. L. Crim. R. 44.5(d) (2018); and (4) any other facts relating to the determination of what is practicable. This assessment must be done with due regard to the fact that Al-Nashiri is facing capital charges. The benefit of the doubt and the burden of reasonable delay should be resolved in Al-Nashiri's favor.
Litigation in this appeal has proceeded for several months without learned counsel because representation by learned counsel for Al-Nashiri was not practicable based on the four factors we have set forth above. We conclude his right to qualified appellate counsel was satisfied during this appeal of the military judge's abatement order.
IX. Authority of the Military Judge over Excusal of SDC
When the UCMJ was amended in 1968, Congress intended military judges to have powers during trials similar to that of U.S. District Court (Article III) judges.[25] The military judge "is the presiding officer in a military commission." R.M.C. 801(a); accord 10 U.S.C. § 948j(a). "As a general rule, a military judge controls the proceedings in a trial referred to his court from beginning to end." United States v. Nivens , 21 U.S.C.M.A. 420, 425, 45 C.M.R. 194, 199 (1972). The military judge has the responsibility to ensure "that military commission proceedings are conducted in a fair and orderly manner, without unnecessary delay or waste of time or resources." R.M.C. 801(a), Discussion. The military judge must "exercise reasonable control over the proceedings." R.M.C. 801(a)(3). Enabling defense counsel to withdraw from representation whenever they disagree with the rulings of the military judge would largely eliminate fair and orderly trials. R.M.C. 505(d)(2)(B) must be *1223 considered in the context of other provisions of the MMC. See Gade v. Nat'l Solid Wastes Mgmt. Ass'n , 505 U.S. 88, 99, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992) (stating a "single sentence" should not be taken out of the context of the "whole law" (citation omitted) ); Petit v. U.S. Dep't of Educ. , 675 F.3d 769, 781-82 (D.C. Cir. 2012) ("[W]e consider not only the language of the particular statutory provision under scrutiny, but also the structure and context of the statutory scheme of which it is a part." (alteration in original) (citation omitted) ).
We agree with the discussion by the Court of Appeals for the Sixth Circuit in Moncier , addressing defense counsel's contention that he had an ethical duty to disobey the trial court to protect his client's constitutional rights:
There is no right of revolution in a United States District Court. The lawyer's duty is not to defy the judge's orders, but to follow them. It is true enough that judges, like other humans, will make mistakes, and that those mistakes will sometimes be to the detriment of a client's rights. But that is what Circuit Courts exist to remedy. "Lawyers are required to obey even incorrect orders; the remedy is on appeal." In re Dellinger , 502 F.2d 813, 816 (7th Cir. 1974). We entirely agree with [the trial judge] that "someone must be in control of what happens in a courtroom[,]" and that the someone is "the trial judge, not the lawyer for a criminal defendant nor the lawyer for the United States." May 30, 2007 Opinion and Order at 23.
571 F.3d at 599 (second brackets in original); see also United States v. Seale , 461 F.2d 345, 371 (7th Cir. 1972) ("As governor of the trial, the trial judge must have the authority necessary to ensure the orderly and expeditious progress of the proceedings. His directives in exercise of this authority must be obeyed; otherwise the clear result would be courtroom chaos."). The Moncier discussion on defense counsel conduct in U.S. District Court applies with equal force to the lawyers who appear before military commissions. Defense counsel's abandonment of Al-Nashiri, despite orders of the military judge that counsel continue to represent him, disrupted "the orderly and expeditious progress of the proceedings." Seale , 461 F.2d at 371. Al-Nashiri was left without several available counsel, including learned counsel, for more than six months and the trial was abated because the military judge reasonably concluded that the trial could not proceed any further under the circumstances.
The CDC's asserted authority to excuse counsel whenever he sees fit improperly usurps the authority of the military judge and positions the CDC to take control of Al-Nashiri's trial. See Pennsylvania v. Local Union 542, Int'l Union of Operating Eng'rs, 552 F.2d 498, 509 (3d Cir. 1977). In Union , the Court of Appeals for the Third Circuit said an attorney who deliberately violates judicial orders in pursuit of
a course that he determines to be in the best interests of his client, offends the dignity and authority of the court and thereby obstructs the administration of justice. To hold otherwise would be to strip trial judges of their power to supervise the proceedings before them, and to clothe counsel with the authority to conduct trials in whatever manner they deem appropriate.
Id. (citation omitted). Defense counsel's conduct caused a significant delay in the Union trial. Id.
The reason for empowering the trial judiciary to control excusal of counsel is simple. Permitting the CDC to unilaterally approve excusal of counsel after entry of appearance on behalf of an accused, at any time during the pendency of a case, will cause havoc with adjudication of the *1224 charges against the accused, as amply demonstrated in Al-Nashiri's case. Under the CDC's view of his authority, he may remove defense counsel the moment the government rests or before closing arguments on the merits without the approval of the military judge. The military commission would have no power to stop the withdrawal. This could force a mistrial as the accused would have no one to represent him or it could delay the trial for months, as it has here. Even in a situation where the excusal occurs during pretrial motions, excusal of Mr. Kammen after nine years of representation without good cause or Al-Nashiri's consent may prejudice Al-Nashiri's right to a fair trial.
Moreover, replacement of Al-Nashiri's learned counsel could take months because a security clearance for counsel is required. In the event new learned counsel is required pursuant to 10 U.S.C. § 949a(b)(2)(C)(ii), a delay of this magnitude may cause a mistrial, as the accused would not have the legal representation he is required to have. See United States v. Cronic , 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) ("[A] trial is unfair if the accused is denied counsel at a critical stage of his trial.); United States v. Decoster , 624 F.2d 196, 256 (D.C. Cir. 1976) ("[W]here the defendant had no counsel at all at a critical stage of his trial, automatic reversal of his conviction is usually in order.").
Beyond these considerations, on December 23, 2008, Mr. Kammen signed an affidavit agreeing to comply with all applicable regulations and rules for counsel, including any rules of court. AE 389 at 9-15. This includes compliance with the procedure for excusal required by RC 4. Mr. Kammen, who is licensed in Indiana, also is ethically bound to continue his representation of Al-Nashiri as ordered by the military judge. See Ind. R. of Prof'l Conduct r. 1.16(c). Under the professional rules of his state, he must give notice to or ask permission from the military commission to terminate his representation of Al-Nashiri. Id. If ordered to do so, Mr. Kammen "shall continue representation [of Al-Nashiri] notwithstanding good cause for terminating the representation." Id.
X. Conclusion
We conclude that the record does not establish good cause for the excusal of Al-Nashiri's SDC. Nevertheless, the CDC had authority to make the initial decision to excuse Al-Nashiri's SDC under R.M.C. 505(d)(2)(B) because the SDC asked to be excused. The military judge, in turn, had the responsibility to review the CDC's decision and to make an independent assessment of whether there existed good cause for excusal. The military judge correctly determined that excusal of the SDC was unsupported by good cause and inimical to a fair and orderly trial for Al-Nashiri.
We further conclude that the military judge's orders take precedence over the orders of the CDC under the circumstances of this case. The military judge's orders to the SDC to continue their representation of Al-Nashiri were lawful. The current 2016 version of RTMC ¶ 9-1.a.3 requires the CDC to ensure that Ms. Spears and Ms. Eliades comply with the Rules of Court and orders of the military judge. We conclude that the CDC violated RTMC ¶ 9-1.a.3 (2016 ed.), as well as the military judge's order, when he refused to order Ms. Spears and Ms. Eliades to resume their representation of Al-Nashiri.
Finally, in deciding Al-Nashiri's abeyance request to this Court, we have ruled with respect to Mr. Kammen that the military judge's approval is required to terminate an attorney-client relationship for good cause and to withdraw as counsel of record. We have further ruled that the *1225 right to learned counsel is statutorily limited to "the extent practical." Both these holdings are now the law-of-the-case and the law of the military commissions even if we did not have pendent jurisdiction to decide them in addressing the merits of appellant's appeal of the abatement order. See LaShawn A. v. Barry , 87 F.3d 1389, 1393-95 (D.C. Cir. 1996) (en banc) (discussing law-of-the-case doctrine); Gen. Comm. of Adjustment, GO-386 v. Burlington N. & Santa Fe Ry. Co. , 295 F.3d 1337, 1340 (D.C. Cir. 2002) (stating that circuit precedent "binds us, unless and until overturned by the court en banc or by [h]igher [a]uthority") (citation omitted) ).
The military judge's abatement order is vacated. Al-Nashiri's SDC remain counsel of record, and they have a legal and ethical obligation to continue their representation of Al-Nashiri. Al-Nashiri's trial is to resume forthwith. We retain jurisdiction over the issue of Al-Nashiri's representation.
MCDO attorneys must comply with orders of the commission military judge. See Moncier , 571 F.3d at 599 ; Seale , 461 F.2d at 371 ; Union , 552 F.2d at 509. The case is remanded to the military judge for proceedings consistent with this decision.[26]
Opinion for the Court filed by Burton, Chief Judge, with whom Silliman, Deputy Chief Judge, joins.
Concurring and Dissenting opinion filed by Pollard, Judge.
Opinion concurring in part and dissenting in part filed by Pollard, Judge.
Pollard, Judge:
I concur in the Court's judgment vacating the February 16, 2018, abatement order, holding that the appellee's senior defense lawyers remain counsel of record and directing the appellee's trial to resume forthwith. I write separately because the majority goes both too far and not far enough in resolving the appeal before us. Therefore, I concur in part with, and dissent in part from, the Court's opinion.
Before the Court is the government's appeal of an abatement order that brought to a halt the prosecution of Abd al Rahim Hussayn Muhammad Al-Nashiri (Al-Nashiri) for capital and other crimes related to his alleged role in attacks and an attempted attack upon two United States Navy vessels and a French supertanker. The government argues that the military judge abused his discretion in entering this order. It asks the Court to reverse the order so that the trial of the appellee can resume. At the core of what led to the abatement *1226 was a challenge to the authority of the military judge to control the proceedings before him and, in particular, defense counsel's disobedience of the military judge's orders that they provide Al-Nashiri with the vigorous and zealous defense to which he is entitled.
I agree, at times for different reasons, with most of the Court's conclusions. We have jurisdiction to hear the government's appeal. There is no reason to delay deciding the appeal, as sought by Al-Nashiri's requests to abstain and for abeyance. Lawyers who appear before a commission are required to obey the orders of the military judge. The Chief Defense Counsel also must obey those orders. However, for now, we need not say more than this obligation extends only to orders that pertain to the military judge's control over lawyers who appear before him or her. Al-Nashiri's right to learned counsel is not absolute. Rather, it is limited to the greatest extent practical. When good cause is the basis for a request to terminate the attorney-client relationship between an accused and a defense lawyer who has appeared before a commission (counsel of record), the military judge is required to find on the record that good cause exists before the relationship may be terminated. As a separate and independent step in addition to the good cause finding, the military judge must approve withdrawal as counsel of record pursuant to Military Commissions Trial Judiciary Rule of Court (RC) 4 (Sept. 1, 2016). Al-Nashiri's senior lawyers, Richard Kammen, Mary E. Spears and Rosa A. Eliades (collectively Senior Defense Counsel) remain Al-Nashiri's defense counsel because they did not secure the military judge's approval for the termination of their attorney-client relationships with the appellee and withdrawal as counsel of record.
I respectfully dissent from the Court finding pendent jurisdiction to address two issues: the military judge's (a) finding that the United States did not intrude into the attorney-client communications between Al-Nashiri and his defense counsel, Tr. 10,038; AE369ZZZ, and (b) ruling that there was no good cause for the termination of Senior Defense Counsel's attorney-client relationship with Al-Nashiri, AE 389F at 5. The only appealable order before the Court is the February 16, 2018 order abating Al-Nashiri's trial. Tr. 12,297-98. Our pendent jurisdiction, therefore, is restricted to reviewing only those non-appealable issues that must be decided in determining whether the military judge abused his discretion by abating the appellee's trial. The majority goes beyond this by addressing issues that we need not decide in reviewing the abuse of discretion question.
The appellee's trial was abated because Al-Nashiri's defense lawyers made it impossible for the trial to continue. First, Mr. Kammen, Ms. Spears and Ms. Eliades refused to obey the military judge's orders to appear before the commission and represent their client after the military judge rejected their efforts to terminate their attorney-client relationship with Al-Nashiri and withdraw as counsel of record without the military judge's approval. Second, the Navy lawyer who remained as detailed defense counsel passively represented Al-Nashiri on the ground that he could do little more until a new learned counsel, that is a lawyer experienced in death penalty cases, filled Mr. Kammen's role in that position. Given this, the Court only needs to address four otherwise non-appealable issues to decide if the military judge entered the abatement order in the proper exercise of his discretion, as follows:
(a) Are lawyers who appear before a military commission required to obey the orders of the military judge?
(b) Does the termination of an attorney-client relationship with an accused for *1227 good cause pursuant to R.M.C. 505(d)(2)(B) require the military judge to find on the record the existence of good cause, as defined by R.M.C. 505(f)?
(c) In addition to the military judge finding good cause, is defense counsel required to obtain the military judge's consent to withdraw as counsel of record pursuant to RC 4?
(d) Does an accused have an absolute right to learned counsel when charged with capital offenses in a prosecution before a military commission?
The Court has pendent jurisdiction to review these issues because they are intertwined with whether the abatement order was appropriately entered, or because it is necessary to address them in order to meaningfully review the abuse of discretion question. The Court, however, does not have pendent jurisdiction to hear and decide the other disputes that the majority addresses.
In addition, it is unwise to reach the merits of the good cause and intrusion issues on the limited record before us.
I further dissent from the Court's failure to say explicitly that Mr. Kammen, Ms. Spears and Ms. Eliades are required to appear before the commission and resume representing Al-Nashiri. The Court has held that they remain counsel of record. This means that the Senior Defense Counsel have a legal duty that requires them to return to the courtroom and represent their client. The majority, however, will not say this because we have refrained, for now, from deciding whether this Court has the power to order Mr. Kammen, Ms. Spears and Ms. Eliades back to the courtroom. Whether we have that power is separate from stating, as the Court should do, that the Senior Defense Counsel's duty as counsel of record requires them to resume forthwith representing Al-Nashiri.
Thus, I write separately to address these and other matters.
I. Abstention Based on the First-to-File Rule
The majority correctly denies Al-Nashiri's motion asking that we defer resolving this appeal because Mr. Kammen filed a habeas action in the United States District Court for the Southern District of Indiana that raises some of the same issues before us and did so before the government filed its appeal.[27] See Majority Op. supra Part VI.B. As the majority points out, Al-Nashiri bases his argument upon the discretionary comity principle that courts of coordinate jurisdiction should not ordinarily both hear and decide the same dispute between the same parties at the same time.[28] See Majority Op. supra Part VI.
The majority's decision to go forward is premised on not knowing whether the district court would address the same merits issues that this Court addresses. See Majority Op. supra Part VI.B. While this may be a reason to deny the motion, the prime reason is as the superior court of the *1228 military commissions we have a duty to pass on the correctness of the rulings and orders of the military judges who preside over the commissions.
Rulings in collateral litigation in a district court concerning the orders of a military judge made during extant trial proceedings have no precedential effect on the military commissions or us. See In re Exec. Office of the President , 215 F.3d 20, 24 (D.C. Cir. 2000) (per curiam) ("District Court decisions do not establish the law of the circuit, nor, indeed, do they even establish the 'law of the district.' " (citations omitted) ), cited with approval in Apotex, Inc. v. FDA, 393 F.3d 210, 218 (D.C. Cir. 2004) (stating that holding of one district court judge does not bind another district court judge); see also Jewish War Veterans of the United States of Am., Inc. v. Mattis , 266 F.Supp.3d 248, 253 (D.D.C. 2017) ("As a district court opinion, it is not binding on any court beyond its use in this case ....").
Thus, any ruling by the district court, even if it agrees with the military judge, will not resolve the dispute concerning the abatement order, nor can it affirm, vacate or reverse it. Moreover, the district court cannot address the dispute regarding the efforts of Ms. Spears and Ms. Eliades to withdraw, or bind the military commissions or its defense community. Thus, unless and until this Court acts, the proceedings below will stay abated no matter what happens in the habeas action that Mr. Kammen commenced in the Southern District of Indiana.
Finally, I strongly disagree with Al-Nashiri's contention that Mr. Kammen was forced to file a habeas action in Indiana because he was "[u]nable to appeal [the military judge's] ruling on his own behalf ...." Appellee Br. 4 (Apr. 4, 2018). Assuming that there was no ability to directly seek an interlocutory appeal, Al-Nashiri offers no reason why Mr. Kammen, on behalf of Al-Nashiri or in his own name, did not seek review in this Court of the military judge's rulings and orders concerning his status as defense counsel based on our All Writs Act jurisdiction, 28 U.S.C. § 1651.
The defense has used the All Writs Act three times to seek appellate review of adverse rulings in or related to Al-Nashiri's commission case. See In re Al-Nashiri , 791 F.3d 71, 75-78 (D.C. Cir. 2015) ( Al-Nashiri I ); In re Al-Nashiri , 835 F.3d 110, 117 (D.C. Cir. 2016) ( Al-Nashiri II ); Appellee Br. 36-41 (July 13, 2018) (seeking under the All Writs Act to vacate the military commission because the referral of charges allegedly was defective). On at least two occasions in other commission cases, the defense community has sought appellate review based on All Writs Act jurisdiction. See In re Mohammad , 866 F.3d 473, 475 (D.C. Cir. 2017) (per curiam); United States v. Al Qosi , 28 F.Supp.3d 1198, 1200-01 (CMCR 2014). However, Mr. Kammen (as well as Ms. Spears and Ms. Eliades) did not seek to appeal under the All Writs Act in this instance. Only after the government appealed the abatement order did Mr. Kammen's co-counsel move to intervene in that appeal so that they could be heard in this Court. See Mot. to Intervene (Mar. 7, 2018).
Whether we would have found jurisdiction to hear an appeal under the All Writs Act is not the issue. The issue is that Mr. Kammen made no effort to bring before this Court the military judge's rulings and orders he believed were erroneous. Mr. Kammen's failure to present the dispute to this Court when he should have,[29] completely *1229 undercuts appellee's argument that we should defer to collateral litigation Mr. Kammen commenced elsewhere to resolve fundamental issues affecting Al-Nashiri's trial.
I would deny the abstention motion for these reasons.
II. Request for Abeyance
Al-Nashiri also asked the Court not to resolve portions of the government's appeal of the abatement order because he says that he has no learned counsel. Appellee Br. 23-35 (Mar. 15, 2018). I concur with the majority's holding that the right to learned counsel is limited by statute to the greatest extent practicable, and a regulation promulgated by the Secretary of Defense cannot override this. See Majority Op. supra Part VIII.
The Court, in my judgment, should make clear that the absence of learned counsel's participation in this appeal is self-created and, in the circumstances presented, cannot be the basis to delay the resolution of any issue properly raised by the government's appeal. The Court correctly holds that Mr. Kammen at all times remained Al-Nashiri's learned counsel and was obligated to represent his client before the military commission. See Majority Op. supra Parts VII.E; X. The Court also correctly holds that Mr. Kammen refused to represent Al-Nashiri despite lawful orders to do so, which he was required to obey, and a contractual obligation to continue as counsel, including with respect to the instant appeal. See Majority Op. supra Parts VII.E, IX, X. Thus, the predicate of Al-Nashiri's abeyance request fails because Mr. Kammen was his learned counsel at all relevant times and continues in this role until properly relieved or the case comes to a conclusion. The fact that Mr. Kammen refuses to perform his duty has no effect on this result.
In addition, Lieutenant (LT) Alaric Piette, the remaining detailed defense counsel, has demonstrated that he has the skill and ability to represent competently Al-Nashiri regarding the issues before the Court. Further, during May 2018, Commander (CDR) Brian Mizer, a highly experienced criminal defense lawyer, was detailed as co-counsel to represent Al-Nashiri.[30] See Appellee Br. (June 4, 2018). At appellee's request, the Court allowed CDR Mizer and LT Piette to file a supplemental brief regarding the issues before the Court. CMCR Order (May 23, 2018); CMCR Order (June 20, 2018).
Thus, I further agree with the majority's conclusion that Al-Nashiri's right to qualified appellate counsel was satisfied during this appeal, and that this limited right also applies before a commission.[31] See Majority Op. supra Part VIII. There is no reason to grant Al-Nashiri's request that the Court delay resolving the government's appeal of the abatement order until he obtains another learned counsel.
*1230 I would deny appellee's abeyance request for these reasons.
I also agree that both the commissions and this Court should proceed carefully when deciding whether, under the relevant circumstances, learned counsel's participation in the defense is to the greatest extent practicable. See Majority Op. supra Part VIII.
III. Merits Issues Properly Resolved Under Pendent Jurisdiction
I join the Court's holding that we have jurisdiction to hear the government's appeal of the February 2018 abatement order and the denial of Al-Nashiri's motion to dismiss the appeal for lack of jurisdiction. See Majority Op. supra Part V.A. What issues the Court may decide in reviewing the abatement order beyond whether its entry was an abuse of discretion is another story. That implicates our pendent jurisdiction, which must be exercised in a parsimonious manner.
A. Pendent Jurisdiction
I agree with the majority's discussion regarding the law of pendent jurisdiction in the D.C. Circuit. See Majority Op. supra Part V.B. At its core, the law permits the Court to address non-appealable orders in the course of reviewing an appealable order if, and only if, the "non-appealable order is 'inextricably intertwined' with an appealable order, or [ ] when review of the former decision is 'necessary to ensure meaningful review of the latter.' " Nat'l R.R. Passenger Corp. v. ExpressTrak, L.L.C. , 330 F.3d 523, 527 (D.C. Cir. 2003) (citations omitted). However, this grant of authority does not mean that all issues embedded within a non-appealable order come within a court's pendent jurisdiction. Rather, pendent jurisdiction is limited to an "order (or part thereof) that is not independently appealable" only to the extent that the "order (or part thereof)" satisfies the pendent jurisdictional standard. Rendall-Speranza v. Nassim , 107 F.3d 913, 917 (D.C. Cir. 1997). The Court, therefore, must parse a non-appealable order to satisfy itself that each issue within it that the Court seeks to review comes within its pendent jurisdiction.
We also must "exercise[ ] pendent appellate jurisdiction sparingly." Gilda Marx, Inc. v. Wildwood Exercise, Inc. , 85 F.3d 675, 678 (D.C. Cir. 1996) (per curiam).
As such, in ruling on whether the abatement order was an abuse of discretion, the Court can only review non-appealable issues that are intertwined with the abatement order or are necessary to decide to give meaningful review to that order. The resolution of such issues must be "essential to the resolution of properly appealed [ ] orders." Swint v. Chambers Cty. Comm'n , 514 U.S. 35, 51, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995) (quoting Riyaz A. Kanji, The Proper Scope of Pendent Appellate Jurisdiction in the Collateral Order Context , 100 Yale L.J. 511, 530 (1990) ). Issues that are "closely related" to an appealable order or issue do not suffice. Abelesz v. OTP Bank , 692 F.3d 638, 647 (7th Cir. 2012). Rather, the resolution of issues arising from a non-appealable order must be "practically indispensable" to the proper resolution of the appeal for which there is jurisdiction. Id. at 647-88 (citation omitted).
The majority departs from these dictates when it finds pendent jurisdiction for issues that are not necessary to assess whether the abatement order was an abuse of discretion. Only four issues, as previously noted, come within the Court's pendent jurisdiction under these strictures.
There is a linear relationship between the refusal of Mr. Kammen, Ms. Spears, Ms. Eliades, and Brigadier General (BGen) John G. Baker, the Chief Defense Counsel, to obey the orders of the military judge *1231 and the military judge's entry of the abatement order. Had they obeyed the military judge, there would be no abatement order.
Mr. Kammen, Ms. Spears and Ms. Eliades would not comply with the military judge's orders that they remained counsel of record and were required to appear before the military commission and defend their client. See Majority Op. supra Part III.D. The Chief Defense Counsel refused to obey the military judge's orders that, among other things, directed him to have Senior Defense Counsel, whom he supervises, return "post-haste" to the courtroom. Tr. 10,058-59; see Majority Op. supra Part III.D.
LT Piette, the detailed defense counsel left behind to represent Al-Nashiri, refused to abide by the military judge's rulings that there was only a qualified right to learned counsel, and that participation in the defense by a learned counsel, under the circumstances, was not practicable. See Majority Op. supra Part VIII. Rather, detailed defense counsel insisted that the appellee had an absolute right to learned counsel, and he passively represented Al-Nashiri in Mr. Kammen's absence. See Majority Op. supra Part III.E. Thus, the conduct of the defense attorneys and the Chief Defense Counsel made it impossible for the military judge to move the case forward. This is what led to the military judge abating the trial.
To determine whether the military judge abused his discretion in entering the abatement order, the Court should only address (1) the obligation to obey the military judge, (2) the need for and failure of Senior Defense Counsel to obtain the military judge's approval for (a) their excusal for good cause and (b), separately, their withdrawal as counsel of record, and (3) the qualified right to learned counsel. Each of these issues is "inextricably intertwined with" whether the military judge abused his discretion in abating the trial because the defense's refusal to obey the military judge's orders was the cause of the commission's inability to continue the trial. For the same reasons, the Court cannot meaningfully review the validity of the abatement order without first deciding if the military judge correctly ruled on these issues. There is no need to address any other matters in determining whether abating the trial was an abuse of discretion.
B. Merits Issues Under Pendent Jurisdiction
In denying appellee's request that the Court refrain from addressing part of the government's appeal, the majority ruled that: (a) the military judge controls the termination of an attorney-client relationship and withdrawal with respect to counsel of record and (b) there is a limited right to learned counsel. Majority Op. supra Parts VII.E, VIII, IX, X. I concur in the Court's conclusions. Thus, I also join in the Court's holding that those rulings now are the law of the case and the law of the military commissions even if the Court did not have pendent jurisdiction to decide them in addressing the merits of the appeal of the abatement order. See Majority Op. supra Part X.
I write separately only with respect to the duty to obey the military judge. While the majority opinion describes in some detail Senior Defense Counsel and BGen Baker's insubordination, it fails to explain fully the level of defiance.
In early 2018, the military judge ordered the prosecution to issue subpoenas compelling Ms. Spears and Ms. Eliades to appear and testify before the commission via a video teleconference facility in Alexandria, Virginia. AE 389MM & AE 389NN at 3; AE 389RR & AE 389SS at 2-4; AE 389TT at 10-11. The majority says that they "opposed compliance with the subpoenas."
*1232 Majority Op. supra Part III.D (citing AE 389KK; AE 389LL; AE 389MM; AE 389NN; AE 389RR; AE 389SS). Ms. Spears and Ms. Eliades did more than that.
On February 2, 2018, through private counsel, they moved to quash the subpoenas. AE 389RR; AE 389SS. The military judge denied their motions on February 12, 2018. See Tr. 11,491-95; 11,853-55. Ms. Spears and Ms. Eliades, thus, were required to appear the next day as commanded by properly served and enforced subpoenas.
They did not comply. Rather, their counsel sent an email to the military judge informing him that Ms. Spears and Ms. Eliades "will not be appearing in the matter because the Commission lacks jurisdiction [over them because they no longer were counsel for Al-Nashiri] and the subpoenas are an abuse of process." AE 389XX; see Tr. 11,854-55; AE 389JJ; AE 389KK; AE 389MM; AE 389NN.
All lawyers who appear before a military commission are required to obey the orders of the military judge and respect the judge. See United States v. Moncier , 571 F.3d 593, 599 (6th Cir. 2009). Ms. Spears and Ms. Eliades' conduct fell woefully short of these standards.
Thus, I join in the majority's ruling on the duty to obey, and emphasize the Court's adoption of the Moncier holding that "[t]here is no right of revolution in a United States District Court. The lawyer's duty is not to defy the judge's orders, but to follow them." Id. If counsel believes the court is wrong, "the remedy is on appeal." Id. (citation omitted); see also Maness v. Meyers , 419 U.S. 449, 458, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975) ("We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal.").
This duty also applies to the Chief Defense Counsel's conduct regarding the rulings and orders of both the military judge and this Court in matters pertaining to control over counsel appearing before a commission. To allow otherwise would erode the authority of the military judge to control and manage the conduct of the trials before him or her.
IV. Merits Issues Not Under Pendent Jurisdiction
The majority errs when it exercises pendent jurisdiction to affirm the military judge's rulings that (a) there was no good cause to permit Senior Defense Counsel to terminate their attorney-client relationship with Al-Nashiri and (b) there was no intrusion by the United States into Al-Nashiri's attorney-client communications. See Majority Op. supra Part V.B. Neither ruling is "practically indispensable," Abelesz , 692 F.3d at 647-48 (citation omitted), or "essential," Swint , 514 U.S. at 51, 115 S.Ct. 1203 (citation omitted), to decide whether the military judge abused his discretion in abating the proceedings. As such, the Court does not have jurisdiction to review these issues. See Kilburn v. Socialist People's Libyan Arab Jamahiriya , 376 F.3d 1123, 1133-34 (D.C. Cir. 2004) (discussing application of Swint , 514 U.S. 35, 115 S.Ct. 1203, 131 L.Ed.2d 60, to pendent appellate jurisdiction issues). Further, the majority simply says that good cause is intertwined inextricably with the abatement order and that intrusion is the cited basis for Senior Defense Counsel's attempted withdrawal as Al-Nashiri's defense attorneys. See Majority Op. supra Part V.B. The majority does not explain how the former is so, or why there is the required compelling need to address either issue in their assessment *1233 of the correctness of the abeyance order.[32] See Majority Op. supra Part V.B.
As support for its finding of pendent jurisdiction to review these rulings, the majority points to the D.C. Circuit's request that the government provide information regarding the intrusion allegations. See Majority Op. supra Part V.B. That request was made during the pendency of the interveners' appeal of our denial of their motion to intervene as right in the appeal before us. The government did not provide the requested information to the D.C. Circuit because the interveners' appeal was dismissed as moot after we treated the motion as one for permissive intervention and granted it. CMCR Order (May 18, 2018); see Spears v. United States , No. 18-1087, 2018 U.S. App. LEXIS 13183 (D.C. Cir. May 21, 2018) (per curiam). Regardless of the D.C. Circuit's reason for its request, which it did not disclose, it has no bearing on this Court's determination of the critical issues that must be resolved in reviewing the abatement order. Accordingly, the D.C. Circuit's request for information is irrelevant to this Court's pendent jurisdiction analysis.
A. The No Good Cause Finding
After Mr. Kammen, Ms. Spears and Ms. Eliades asserted that they no longer were Al-Nashiri's lawyers and left the case, LT Piette filed a motion to abate the trial until new learned counsel was detailed to represent Al-Nashiri. AE 389. The military judge denied the motion on October 27, 2017. AE 389F. In the context of denying the motion, the military judge found that there was no good cause to terminate the attorney-client relationship between Al-Nashiri and Senior Defense Counsel. Id. at 5. This finding primarily was based upon the failure of Senior Defense Counsel and the refusal of the Chief Defense Counsel to provide any justification for their claim that good cause existed beyond the Chief Defense Counsel's letters and its enclosures purporting to relieve counsel as Al-Nashiri's defense attorneys. See AE 389F; Majority Op. supra Parts III.D, IV.
The majority does not explain the manner in which the no good cause finding, relating to an October 2017 abeyance motion, has anything to do with the February 2018 abatement order that would permit the Court under the applicable exacting standard to assert pendent jurisdiction to assess whether there was no good cause. See Majority Op. supra Part V.B. Moreover, regardless of whether the military judge was right or wrong in his October 2017 finding, his no good cause ruling has nothing to do with Senior Defense Counsel leaving the case. As noted, when the October ruling was made, they already had told the military judge that they would not continue as Al-Nashiri's defense lawyers. Again, right or wrong, the no good cause finding does not have anything to do with counsel's refusal to return. In contrast, there is a direct correlation between the Senior Defense Counsel and the Chief Defense Counsel refusal to obey the military judge's orders requiring the Senior Defense Counsel to return to the courtroom and represent Al-Nashiri and LT Piette's *1234 refusal to accept the ruling that there was no absolute right to learned counsel and the February 2018 abatement order.
B. The Intrusion Ruling
The majority compounds its error regarding pendent jurisdiction by boot strapping a jurisdictional justification to review the intrusion allegations. The Court, without further explanation, says it is necessary to review the military judge's earlier factual finding concerning intrusion to adequately review the no good cause ruling made in denying Al-Nashiri's October 2017 abeyance motion and, further, intrusion was intertwined with the latter ruling. See Majority Op. supra Part V. Separately, the government asked the Court to review and affirm the military judge's September 20, 2017, ruling denying Al-Nashiri discovery relief based upon his allegations that the United States had intruded into his attorney-client communications. See AE 369YYY-AE 369CCCC; Tr. 10,038. The stated purpose of the government's request is to obtain a ruling from this Court that the military judge properly found that there was no intrusion. See Appellant Br. 1 (Mar. 5, 2018).
Neither the theory advanced by the majority nor the request from the government, however, has anything to do with the February 2018 abatement order that brought Al-Nashiri's trial to a halt. Accordingly, there is no compelling reason to address the intrusion allegations. Consequently, there is no pendent jurisdiction that allows the Court to rule upon the military judge's finding in his October 2017 denial of Appellee's discovery motion that there was no intrusion. Nothing in the majority's opinion explains otherwise.
C. The Undeveloped Record
The D.C. Circuit cautions, "[w]e also must be careful not to accept pendent appeals prematurely, without the benefit of an adequate record or before the district court has an opportunity to render a considered decision on the subject." Gilda Marx, 85 F.3d at 679 ; see also Rendall-Speranza , 107 F.3d at 917 (stating "the exercise of pendent jurisdiction is disfavored if the court lacks the benefit of an adequate record").
There is no fully developed commission record regarding the allegation that the United States intruded into Al-Nashiri's attorney-client communications. The military judge's finding that the United States did not intrude is based on the government's representations that the United States did not intrude and the Court's observations that the defense failed to offer evidence challenging those representations.[33] This comes from the judge's decisions denying Al-Nashiri's discovery motion and his October 16, 2017, abatement motion. See AE 389F at 5-6; AE 369YYY; Tr. 10,038 (citing AE 369ZZZ); see also Majority Op. supra Parts III.D, VII.E.
What is appropriately before the Court is not an "adequate record" upon which to assess properly the no intrusion finding. This is borne out by the majority's reliance upon a declaration and documents that are not a part of the record below, and for which there is no basis to supplement the appellate record by including them.
The commission record upon which the majority reviews the no good cause finding in the decision denying Al-Nashiri's October 2017 abatement motion similarly is inadequate. The military judge's decision is premised upon a failure of proof. All that *1235 was before him was the Chief Defense Counsel's letters and its enclosures approving Senior Defense Counsel's request to leave the case and their refusal to further justify the claim of good cause. AE 389 & Attach. C; AE 389F; see Majority Op. supra Part III.D.
Thus, what is properly before the Court, in my judgment, is too sparse a record to review the findings of no intrusion and no good cause, even if the other elements necessary for review based on pendent jurisdiction were present. This is even more so when, as here, those other predicates to pendent jurisdiction are lacking. Assuming jurisdiction, the Court should wait until there is a more developed commission record and substantive rulings based on that record, before the military judge's findings are ripe for appellate review.
The majority's reliance on a declaration and documents dehors the military commission's record cannot cure the inadequacies in the record properly before the Court. Both parties submitted documents to this Court that are not in the commission record. The government submitted an unclassified appendix with its Merits Brief (Mar. 5, 2018) and a classified appendix with its Reply Brief and Motion to File a Supplemental Classified Appendix (Mar. 20, 2018). The classified appendix consists of the classified declarations of the Commander, Joint Detention Group (JDG) at Naval Station Guantanamo Bay and the Central Intelligence Agency (CIA), Deputy General Counsel for Litigation and Investigations. The government moved for permission to file both appendices in this Court. Appellant Mot. to File App. (Mar. 5, 2018); Appellant Br. & Mot. to File Suppl. Classified App. (Mar. 20, 2018).
Al-Nashiri submitted more than 300 pages of classified documents with his July 2, 2018, classified Supplemental Brief. He asked the Court to consider them if, absent an evidentiary hearing, the Court addresses the intrusion question presented by appellant. See Appellee Br. 2 (July 2, 2018). He did not make a motion to supplement the appellate record with these documents.
In addition, the government filed in this Court its voluntary response to Al-Nashiri's discovery requests. Appellant Disc. Br. (June 5, 2018). As discussed supra , the D.C. Circuit had requested the same information that Al-Nashiri later sought after the D.C. Circuit's request became moot. The government's voluntary response included the May 21, 2018, declaration of Colonel (Col.) John B. Wells and five attachments thereto. Id . at Ex. 1, Wells Decl. Col. Wells is a senior member of the prosecution. His declaration includes a comprehensive recitation of the government's factual contentions concerning the allegations that the United States had intruded into the privileged conversations between Al-Nashiri and his counsel. See id.
The first attachment (A) to the Wells Declaration is a classified transcript of the proceedings below on July 31, 2017. The second (B) is a two-page unsworn summary of facts as advocated by the government concerning the allegations of intrusion involving Al-Nashiri. That summary also is a part of the appellant's March 5, 2018, brief opposing appellee's motion to dismiss the appeal for lack of jurisdiction and is a part of appellant's appendix (App. 18-19). The government acknowledges that the summary "is not of record before the Commission." Appellant Br. 5 n.4 (Mar. 5, 2018). The third and fourth (C) and (D) are, respectively, the classified declarations of the JDG Commander and the CIA Deputy General Counsel for Litigation and Investigations. The fifth attachment (E) is an unclassified excerpt from AE 369MM, the government's response to the motion to advise Al-Nashiri of potential intrusions. The two declarations, attachments (C) and *1236 (D), also comprise the classified appendix submitted with Appellant's Reply Brief and Motion to File a Supplemental Classified Appendix (Mar. 20, 2018).
The government did not move to supplement the appellate record to include the Wells Declaration or attachment (B), the two-page unsworn factual summary regarding the intrusion allegations.[34] It did seek to file the Wells Declaration as part of its opposition to Appellee's Motion for Discovery and Stay (May 31, 2018). It did so to cut off further litigation over "Appellee's request for 'appellate discovery' " and to obtain a "speedy - and just - resolution of this interlocutory appeal." Appellant Response to Appellee Motion for Discovery 5-6 (June 5, 2018). This response cannot be construed as a motion to supplement the appellate record.
In an order dated October 11, 2018, the majority admitted into the appellate record all of the documents in the two government appendices, the Wells Declaration and some 300 documents that appellee submitted with his July 2, 2018, classified Supplemental Brief. I concurred in part with, and dissented in part from, this Order, a copy of which is an attachment to this opinion. Regardless of the manner in which the proposed use of these documents in the appellate process is presented to the Court procedurally, the core issues are whether in rendering a decision regarding alleged intrusion the Court may properly supplement the appellate record with them and rely upon them and other documents not in the commission record. In my judgment, it may not.
The majority of the documents not in the commission record that the majority admits into the appellate record, including the 300 plus classified pages submitted by Al-Nashiri, and other documents properly admitted into the appellate record are irrelevant to the disposition of the appeal. The same cannot be said for a handful of extra-record documents upon which the majority relies in affirming the military judge's finding that there was no intrusion.
The majority affirms the finding that the United States did not intrude in Al-Nashiri's attorney-client communications based on the government's representations that the United States did not intrude,[35] the Court's observations that the defense failed to offer evidence that challenges those representations and the government's factual contentions regarding what did and did not occur. As part of its support for its conclusion, the majority materially relies upon the Wells Declaration, the two-page unsworn fact summary and a March 26, 2018, status report. See, e.g. , Majority Op. supra Parts III.B, III.G, VII.E. None of these documents was in the record before the military judge when he entered the February 16, 2018, abatement order. None is properly before this Court. All of it is hearsay. The Court, therefore, should not rely upon these documents in deciding the alleged intrusion issue.[36]
*1237 Col. Wells sets forth in detail the government's factual contentions that go to the heart of the intrusion allegations. The majority says that it relies on the Wells Declaration as background information and that it did not provide essential support for the majority's opinion. See CMCR Order 2-3 (Oct. 11, 2018). I respectfully do not agree. The majority cites the Wells Declaration as substantive support for its opinion regarding the intrusion issue.[37] See, e.g. , Majority Op. supra Parts III.B, VII.E. Col. Wells also offers his conclusion regarding the ultimate issue. For example, he says, "it is my belief that no intrusions have ever occurred into the confidentiality of petitioners' communications with their client." Wells Decl. ¶ 15.
The majority similarly cites to the government's two-page unsworn summary of its factual contentions regarding alleged intrusion (directly and from its March 5, 2018, brief) and its March 28, 2018, Status Report, to support its conclusion that intrusion was not established below.[38] See, e.g. , Majority Op. supra Parts III.B, III.G. Again, none of this is in the commission record.
We review the legal and, in appropriate cases, factual findings of a commission. In doing so, we should follow a central principle of appellate review: "If the evidence is not in the record, it is not in the record ...." Nat'l Council of Am.-Soviet Friendship, Inc. v. Subversive Activities Control Bd. , 301 F.2d 518, 519 (D.C. Cir. 1962) (per curiam).
Supreme Court holdings make clear that this principle is impressed upon all federal appellate courts. In Adickes v. S.H. Kress & Co. , 398 U.S. 144, 157 n.16, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the Supreme Court rejected any use of extra-record evidence in deciding the appeal before it. The Court said:
In a supplemental brief filed in this Court respondent lodged a copy of an unsworn statement by [a witness] denying *1238 any contact with the police on the day in question. Apart from the fact that the statement is unsworn, see Fed. R. Civ. Proc. 56(e), the statement itself is not in the record of the proceedings below and therefore could not have been considered by the trial court. Manifestly, it cannot be properly considered by us in the disposition of the case.
Adickes , 398 U.S. at 157 n.16, 90 S.Ct. 1598 ; see also Kansas v. Hendricks , 521 U.S. 346, 392, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) (stating "[i]t is the record, not the parties' view of it, that must control our decision" and collecting similar cases); FW/PBS, Inc. v. City of Dallas , 493 U.S. 215, 235, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (stating "we may not rely on the city's affidavit, because it is evidence first introduced to this Court and 'is not in the record of the proceedings below' " (quoting Adickes , 398 U.S. at 157 n.16, 90 S.Ct. 1598 ) ), abrogated in part on other grounds by City of Littleton v. Z.J. Gifts D-4, L.L.C. , 541 U.S. 774, 781, 124 S.Ct. 2219, 159 L.Ed.2d 84 (2004) ; Carr v. Corning , 182 F.2d 14, 21 (D.C. Cir. 1950) ("An appellate court ... cannot decide a question of fact upon evidence which is not in the record.").
I respectfully submit that this Court is bound by these holdings.[39]
Among the reasons that we only may look to evidence properly in the record is because of the potential adverse consequences for the opposing party. This point was made in United States v. Hoover , 246 F.3d 1054, 1064 (7th Cir. 2001) (concurring opinion):
We do not allow parties to stray beyond the bounds of the record for reasons so obvious and familiar that they scarcely require mention: if the evidence upon which a party bases its argument is not in the record, then the opposing party has not had the opportunity to respond appropriately, the district court has never had the opportunity to assess that evidence, and last, but by no means least, when push comes to shove, the "evidence" may never materialize--litigants often make representations that turn out to be inaccurate.
When the government attempted to use the unsworn factual summary and classified declarations that were not in the commission record, Al-Nashiri objected. See Appellee Br. (Mar. 8, 2018); Appellee Br. (Mar. 19, 2018); Appellee Br. (Mar. 21, 2018). Al-Nashiri also was entitled to an opportunity to challenge the Wells Declaration and the Status Report before the majority admitted those documents to the appellate record and relied on them in affirming the military judge's finding of no intrusion.
The majority says that no one objected to any documents filed with the Court after March 21, 2018. CMCR Order 1 (Oct. 11, 2018). The lack of an objection to a court filing, however, is not a basis to include extra-record documents in the appellate record and use them to affirm a factual finding. Rather, first a motion to *1239 supplement the record needs to be made and then the opposing party has an opportunity to object or oppose the motion. Compare Hescox v. Niagara Wheatfield Cent. Sch. Dist. , 12 F. App'x 86, 89 (2d Cir. 2001) (considering appellate record supplemented with conference transcript on the "eve of oral argument of this appeal, [when] the School District moved, without objection from Hescox, to supplement"), with F.E.L. Publ'ns, Ltd. v. Cath. Bishop of Chicago , No. 81-1333, 1982 WL 19198, at *10 n.20 (7th Cir. Mar. 25, 1982) (vacating order that permitted appellate record to be supplemented with documents not in the trial record without notice to adverse party).
Here, there was no motion for leave to add the Wells Declaration and the Status Report to the appellate record. The Court did not give notice that it, sua sponte, would admit either document to the appellate record and use them in addressing the intrusion allegations. Accordingly, Al-Nashiri had no reason or opportunity to object to the majority's use of the Wells Declaration or the Status Report to support their affirmance of the no intrusion finding.
The majority also says that the extra-record Wells declaration is "cumulative of the information presented to the military commission." CMCR Order 2 (Oct. 11, 2018). Thus, I fail to see the reason to cite to it, and not documents in the commission record. Denominating the extra-record evidence as background information does not permit the majority to point to it as justification for its holding. Am. Council of the Blind v. Mnuchin , 878 F.3d 360, 365 n.4 (D.C. Cir. 2017), cited by the majority in its October 11, 2018, order is not to the contrary. That case involved the D.C. Circuit taking judicial notice of more current information concerning the frequency of downloads of a free mobile phone "currency-reading" application. Id. at 364-65 & n.4. This information was but a small part of various facts being weighed to determine whether the district court abused its discretion in concluding that continued delay in access to paper currency by the blind remained equitable in light of "the potential financial burden resulting from granting the plaintiffs' [request for currency] modification ...." Id. at 371. Council of Blind supplies no support for the majority's reliance upon the Wells Declaration, the two-page unsworn summary and the Status Report as primary support for affirming the military judge's factual finding.
For these reason, I respectfully dissent from the majority's opinion affirming the military judge's rulings regarding no good cause and alleged intrusion and dissent, in part, from the October 11, 2018, order admitting documents into the appellate record.
V. Defense Counsel Is Required to Return to the Courtroom
The Court has ruled that Mr. Kammen, Ms. Spears and Ms. Eliades remain counsel of record for Al-Nashiri and are subject to the jurisdiction of the commission and the orders of the military judge. See Majority Op. supra Part X. As such, each has a legal and ethical duty to resume representing his or her client. See Majority Op. supra Parts VII.E, X. They cannot turn their back on this obligation. Rather, as the D.C. Circuit has told us, "the definition of 'duty,' [ ] is 'something that one is expected or required to do by moral or legal obligation.' The Random House College Dictionary 411 (Revised Ed.1980)." United States v. Espy , 145 F.3d 1369, 1371 (D.C. Cir. 1998).
Thus, Mr. Kammen, Ms. Spears and Ms. Eliades are required to return to the courtroom and represent Al-Nashiri before the commission. The Court will not say this because the majority believes that stating what the law requires of Senior *1240 Defense Counsel is tantamount to this Court ordering them to resume representing Al-Nashiri. Whether as an Article I appellate court we have inherent power or some other authority, such as under the All Writs Act, 28 U.S.C. § 1651, to issue such an order is a difficult question that the Court rightly leaves to another day.
Stating plainly the legal consequences of the Court's holding that Mr. Kammen, Ms. Spears and Ms. Eliades remain counsel of record is not an order. Moreover, assuming that we had the power to do so, the Court does not need to order them to return to the courtroom at this junction. Rather, we "may rightfully assume that" as officers of the court they will comply with the Court's ruling and "will conduct themselves not inconsistent with our opinion." Cf . Dellinger v. Mitchell , 442 F.2d 782, 790 (D.C. Cir. 1971).[40]
VI. The Abeyance Order
To the extent that the Court's opinion may be read as reversing the military judge's abatement order as an abuse of discretion, I dissent.
The military judge abated Al-Nashiri's trial because Mr. Kammen, Ms. Spears and Ms. Eliades' disobedience obstructed the military judge's ability to continue the trial. The trial ground to a halt because of this and LT Piette's passive representation of Al-Nashiri. The conduct of the Chief Defense Counsel contributed to this. Thus, in my view, the military judge did not abuse his discretion in abating the trial. He had no other choice. The trial could not continue in the circumstances that the commission faced.
In deciding the government's appeal, the Court has resolved the disputes that led to the abatement order. In light of this, the basis for the abatement order no longer exists. Thus, I concur in vacating the military judge's abatement order, remanding this action to the military commission and directing that the trial resume forthwith. See 28 U.S.C. § 2106.
VII. Conclusion
For these reasons, I concur in the Court's judgment and concur in part in, and dissent in part from, the Court's opinion, as stated above.
ATTACHMENT
*1241 Appendix A (Merits Decision)
UNITED STATES COURT OF MILITARY COMMISSION REVIEW
United States, ) ORDER ) Appellant ) ADMISSIBILITY OF ) DOCUMENTS v. ) ) Abd Al-Rahim Hussayn ) Muhammad Al-Nashiri, ) October 11, 2018 ) Appellee ) CMCR Case No. 18-002
BEFORE:
BURTON, PRESIDING Judge
SILLIMAN, POLLARD Judges
On March 8, 19, and 21, 2018, appellee filed motions to strike appellant's documents. Appellant opposed the motions. Appellant's unclassified appendix consists of 4,700 pages of documents. In general, the documents consist of: (a) military commission exhibits and transcripts from litigation in the Al-Nashiri case: (b) statutes and military commission rules and regulations; (c) transcripts and exhibits from other commission cases, and (d) case law, reference material and emails.
On May 10, 2018, in response to intervenor's contentions of intrusions into Al-Nashiri's relationship with his counsel, the D.C. Circuit ordered discovery, seeking declarations and other evidence from the Government about those intrusions. App. A. After the D.C. Circuit dismissed the case as moot, appellee moved for the same discovery, and appellant provided responsive documentation. We denied appellee's motion for discovery because it was moot. While this case has been pending at our Court, appellee and intervenors moved for admission of hundreds of pages of documents. There were no objections to the documents offered after March 21, 2018.
Appellee's only evidentiary objections to specific documents were to a two-page unclassified summary of background information about the intrusions *1242 filed on March 5, 2018 (App. B), and to a classified appendix appellant filed on March 20, 2018.
CMCR Rule of Practice 29 provides the following guidance concerning appendices:
An appendix may set forth matters for the convenience of the CMCR, such as extracts from the record of trial, statutes, rules, or regulations; copies of decisions of other courts; and unpublished decisions. See Rules 15(d) and 21. Appendices must not be used to submit extra-record factual matter, which must instead be submitted to the CMCR by Motion to Admit ... or other appropriate motion.
The statutes, court rules, court regulations and reference materials contained in the Government's Appendix may be included in the appendix for the convenience of the Court as they may be helpful to our Court. Military commission exhibits and transcripts in Al-Nashiri's case are part of the record below and may be relied upon by our Court in resolving this appeal.See Crumpacker v. Ciraolo-Klepper, 715 F. App'x 18, 19 (D.C. Cir. 2018) (unpub.) (citingMcGuirl v. United States, 167 F. App'x 808 (D.C. Cir. 2005) (unpub.)).
Appellant's Appendix also contains exhibits or transcripts from other military commission cases and documentation filed in litigation filed in the U.S. district courts. We may take judicial of these records.See Cal. Valley Miwok Tribe v. United States, 515 F.3d 1262, 1265 n.5 (D.C. Cir. 2007) (citingVeg-Mix, Inc. v. U.S. Dep't of Agric., 832 F.2d 601, 607 (D.C. Cir. 1987)). We "take[ ] judicial notice of the existence of [filings and transcripts in other cases], not the accuracy of any legal or factual assertions made therein."See Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384, 1388-89 (2d Cir. 1992).See also Am. Council of the Blind v. Mnuchin, 878 F.3d 360, 365 n. 4 (D.C. Cir. 2017) (appellate court considered document "filed in district court after briefing on appeal was complete" for background information on Government's efforts to provide meaningful access to currency for visually impaired persons).
The facts appellant provided in declarations generated after the military judge abated the military commission on February 16, 2018, are cumulative of the information presented to the military commission, and that information did not provide essential support for our decisions.
Appellee and appellant agree on fundamental facts about the intrusions that were presented to the military judge. Appellee objected to our Court's acceptance of Government denials of intrusions into Al-Nashiri's attorney-client relationship. In a classified appendix to the Court's opinion deciding the Government's appeal, the majority provides background information about the allegations of intrusions. The Court also provides the unclassified summary of facts concerning the "legacy" microphone in an appendix. App. B.
*1243 On July 2, 2018, Appellee filed a Supplemental Brief that included more than 300 pages of classified documents. Appellee asked the Court to consider those documents if it addressed the intrusion question presented by Appellant; however, appellee prefers that our Court order an evidentiary hearing conducted in accordance withUnited States v. DuBay, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967), Appellant did not object to our consideration of these documents. Although this Appendix has low relevance to the issues discussed in this case, it is admitted.
The military judge found that there was no evidence of Government intrusions into Al-Nashiri's attorney-client relationship. We are required to assess the accuracy of the military judge's findings. The declarations generated after February 16, 2018, do not conflict with the military judge's findings and are cumulative of other record information. The information from appellant's March 5, 2018 brief, App. B, is primarily based on classified information previously considered by the military commission.
IT IS HEREBY ORDERED that
All of the documents and briefs appellant, appellee, and intervenors submitted for our Court's consideration areADMITTED .
The documents provided in response to the D.C. Circuit discovery order, App. A, are admitted for the limited purpose of providing background information.
The information in the two-page fact summary, App. B, and the Classified Appendix, to the extent they are supported by declarations and other evidence in the transcript and exhibits admitted by the military commission, are admitted as background information.
The documents and transcript submitted by the Director, Office of Court Administration, Office of Military Commissions on March 12, 2018, are substituted for duplicates of the documents submitted by the parties and intervenors.
Appellee's Motion to strike Appellant's Appendix and Brief isDENIED .
Appellee's Motion to strike Appellant's Reply Brief and Classified Appendix isDENIED .

Citations to briefs and motions filed by appellant, appellee, amici, and intervenors are designated in this decision by their source and date of filing with the court without regard to their captions. Additional information is provided when multiple briefs have been filed on a single day by the same party or interest.

Our court is under the control of the same Department of Defense (DoD) information technology (IT) personnel as the Military Commission Defense Office (MCDO). In 2013, numerous court files did not complete the transition process to a new technological system and were lost.

See DoD Instr. 8530.01, Cybersecurity Activities Support to DoD Information Network Operations, ¶¶ 1.a; 2; 3.c; encl. 3 ¶¶ 1.b, 5-6 (Mar. 7, 2016) (C1, July 25, 2017). DoD IT personnel have access to our Court's files and appellant's files, including Internet search information. This general access is akin to the U.S. Post Office access to the mail of everyone who sends a letter, with the primary exception that DoD IT personnel may search files without a search authorization or probable cause to believe an offense has been committed.

Appendix A to this decision is our October 10, 2018 order regarding admissibility of documents with two Appendices. Appendix A to our October 10, 2018 order is an order from the D.C. Circuit in Spears & Eliades v. United States , No. 18-1087 (D.C. Cir. May 10, 2018) (per curiam), directing the government to submit evidence describing any intrusions. Appendix B to our October 10, 2018 order contains the government's summary of unclassified facts relating to the alleged intrusions. Appellant Juris. Br. 5-6 (Mar. 5, 2018); Appellant Response to Appellee's Motion for Discovery, Ex. 1 (May 21, 2018 Wells Dec.), Attach. B.
Appendix B to this decision is the classified summary about intrusions.

Professor Yaroshefsky is the Howard Lichtenstein Distinguished Professor of Legal Ethics and the Executive Director of the Monroe H. Freedman Institute for the Study of Legal Ethics. AE 339L at 25; AE 389 at 38.

The Defense Intrusion Allegations allege: "Following broad searches of archived electronic communications on behalf of the prosecution, IT technicians send the prosecution what may have been hundreds of thousands of internal defense emails. The Chief Prosecutor guarantees that '[a]t no time did any prosecutor actually view the content of any privileged defense communications'." AE 389 at 33-34 (brackets in original; footnote omitted). In February 2013, our Court ordered a search of emails sent and received by the prosecution and the convening authority from or to each other, or from the defense counsel to the prosecution and the convening authority (but not defense privileged communications) in an attempt to locate documents related to a waiver and/or withdrawal of the appeal of another accused. See United States v. Al Qosi , 28 F.Supp.3d 1198, 1205 (CMCR 2014). The IT person assigned to conduct the search erred in selection of search parameters and collected defense email communications. AE 153 at 8 & Attach. J. The prosecution was tasked to screen the emails. A prosecutor discovered that some defense emails were collected. Id. He did not read them, and informed our Court of the issue. Al Qosi , 28 F.Supp.3d at 1206 ; see AE 153 at 8-9 ¶ 5.n. We terminated the search. AE 153 at 9 ¶ 5.n; Al Qosi , 28 F.Supp.3d at 1206.

"Professor Yasoshefsky's opinion is based solely on a condensed and unclassified summary of some of the relevant facts." AE 389 at 19. There are references in her opinion that classified information known to Chief Defense Counsel and defense counsel contradict the military judge's finding of no intrusion into Al-Nashiri's attorney-client communications. See id. at 23-24. Professor Yaroshefsky, however, has no way to know what this classified information might reveal, and thus her opinion was based on incomplete information.

Ind. R. Prof'l Conduct (Rule) 1.1 requires a lawyer to provide competent representation. Rule 1.3 requires a lawyer to "act with reasonable diligence." Rule 1.4 requires a lawyer to consult with the client, keep the client informed, and explain matters to the client. Rule 1.6 requires a lawyer to safeguard confidential client information. Rule 1.16(a)(1) requires a lawyer to withdraw from representing a client if representation will result in violation of another rule of professional responsibility or other law. Professor Yaroshefsky did not mention in her opinion Rule 1.16(c), which states, "When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation."

Unless stated otherwise, the sources for the facts in this paragraph and the next paragraph are the SDC's requests to the CDC for release from representing Al-Nashiri. AE 339J; AE 339K; AE 339L.

In addition, we note that counsel is required under Military Commissions Trial Judiciary Rules of Court 4.2.a(3), 4.2.b, 4.2.c, and 4.4.b (Sept. 1, 2016) to obtain the commission's permission to withdraw as counsel. See AE 389F at 5 (commission ruling stating military judge is excusal authority).

"The military judge should ordinarily require a witness to claim his privilege on a question-by-question basis." See United States v. Vega-Cancel , 19 M.J. 899, 901 (A.C.M.R. 1985) (per curiam). Only in those instances where the court finds the witness could " 'legitimately refuse to answer essentially all relevant questions' may the witness be totally excused." Id. at 901-02 (citation omitted).

Lieutenant (LT) Piette's brief states, "The only position that Appellee has consistently taken is his desire to have the assistance of learned counsel at these proceedings. He has not released his learned counsel. He cannot make counsel appear at the commission to represent him." Appellee Br. 22 (Mar. 15, 2018) (citations omitted). Al-Nashiri did not consent to the release of any of his defense counsel. Id. Our disposition makes it unnecessary to decide whether Al-Nashiri waived the presence of his SDC and the impact of any such waiver.

10 U.S.C. § 950d(a)(1) and (2) state:
(a) Interlocutory Appeal. Except as provided in subsection (b), in a trial by military commission under this chapter, the United States may take an interlocutory appeal to the United States Court of Military Commission Review of any order or ruling of the military judge-- (1) that terminates proceedings of the military commission with respect to a charge or specification; (2) that excludes evidence that is substantial proof of a fact material in the proceeding; ....

10 U.S.C. § 948b(c) states:
Construction of provisions. The procedures for military commissions set forth in this chapter are based upon the procedures for trial by general courts-martial under chapter 47 of this title (the Uniform Code of Military Justice). Chapter 47 of this title does not, by its terms, apply to trial by military commission except as specifically provided therein or in this chapter, and many of the provisions of chapter 47 of this title are by their terms inapplicable to military commissions. The judicial construction and application of chapter 47 of this title, while instructive, is therefore not of its own force binding on military commissions established under this chapter.

10 U.S.C. § 862(a)(1) states:
[T]he United States may appeal the following (other than an order or ruling that is, or that amounts to, a finding of not guilty with respect to the charge or specification):
(A) An order or ruling of the military judge which terminates the proceedings with respect to a charge or specification.
(B) An order or ruling which excludes evidence that is substantial proof of a fact material in the proceeding
....
10 U.S.C. § 862(e) states: "The provisions of this section shall be liberally construed to effect its purposes." Section 862(e) becomes effective on January 1, 2019. Act Dec. 23, 2016, § 5542(a), Pub. L. No. 114-328, 130 Stat. 2000. Section 862(e) does "not apply to cases in which charges were referred to trial prior to [its] effective date." United States v. Hardy , 77 M.J. 438, 439 n.2 (C.A.A.F. 2018) (citing Exec. Order No. 13,825, 83 Fed. Reg. 9,889 (Mar. 8, 2018) ). 10 U.S.C. § 950d(a) does not include the liberal construction provision of 10 U.S.C. § 862(e).

In the alternative, appellant seeks extraordinary relief under 10 U.S.C. § 950f (jurisdictional provisions) and the All Writs Act, 28 U.S.C. § 1651(a). Appellant Br. 4, 13-18 (Apr. 12, 2018); see United States v. Farnsworth , 456 F.3d 394, 398-403 (3d Cir. 2006) (examining jurisdiction first under 18 U.S.C. § 3731, the Criminal Appeals Act, and then under 28 U.S.C. § 1651, as a writ of mandamus); United States v. Whittaker , 268 F.3d 185, 193 (3d Cir. 2001) ("[W]e point out that if we found that we did not have appellate jurisdiction, we could and would exercise mandamus jurisdiction."); United States v. Fernandez-Toledo , 737 F.2d 912, 913 (11th Cir. 1984) (finding jurisdiction over mandamus action under the All Writs Act where appellate jurisdiction was not authorized). Because we find we have jurisdiction under 10 U.S.C. § 950d, it is not necessary to consider Al-Nashiri's appeal as a petition for extraordinary relief under the All Writs Act. United States v. Johnson , 76 M.J. 673, 676 n.1 (A.F. Ct. Crim. App. 2017).

The District Court for the Southern District of Indiana found that it had jurisdiction, citing Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist., 411 U.S. 345, 351, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973), and that it had authority to stay proceedings to maintain the status quo pending further hearing, citing United States v. United Mine Workers , 330 U.S. 258, 292-293, 67 S.Ct. 677, 91 L.Ed. 884 (1947). Kammen v. Mattis , No. 1:17-cv-03951-TWP-DML, 2017 U.S. Dist. LEXIS 182533, at *2 (S.D. Ind. Nov. 3, 2017).

According to the Office of Military Commissions website, Chapter 9 of the Regulation for Trial by Military Commission (RTMC) was amended in 2016. See www.mc.mil/LEGALRESOURCES/MilitaryCommissionsDocuments.aspx.

Al-Nashiri notes that Manual for Courts-Martial (2016 ed.), Rule for Courts-Martial (R.C.M.) 506(c), is not included in the Manual for Military Commissions. Appellee Br. 10-11 (Mar. 15, 2018); Appellee Br. 2-3 (Apr. 9, 2018). R.C.M. 506(c) states:
Except as otherwise provided in R.C.M. 505(d) (2) and subsection (b)(3) of this rule, defense counsel may be excused only with the express consent of the accused, or by the military judge upon application for withdrawal by the defense counsel for good cause shown.

The May 5, 2014, Military Commissions Trial Judiciary Rule of Court 4.4.b states that after arraignment, "A defense counsel who has entered an appearance in a Commissions session will not be excused without permission of the Military Judge." In the September 1, 2016, revision, Rule 4.4.b remained the same; however, the requirement for excusal by the military judge was specifically added in two additional places in Rule 4, at 4.2.a(3) and 4.2.c and by reference at 4.2.b. Al-Nashiri was arraigned on November 9, 2011. AE 087D at ¶ 1.

Appellee urged our Court to hold that the military judge "Abused his Discretion When he Found No Sixth Amendment Violation for Ongoing Interference with Mr. Al-Nashiri's Attorney-Client Relationship." Appellee Br. 6 (July 2, 2018) (emphasis omitted). The contents of appellee's brief relating to the alleged intrusions are classified. Id. Appellant provided an unclassified response. Appellant Br. (July 16, 2018).

If there is evidence of an intrusion into Al-Nashiri's attorney-client relationship, the military judge shall determine (a) whether any privileged information has been provided to the prosecution and (b) if Al-Nashiri has been prejudiced. See United States v. Kelly , 790 F.2d 130, 136-37 (D.C. Cir. 1986). Then, based upon a fully developed record, the military judge shall make findings of fact and conclusions of law and enter an order he deems just.

Al-Nashiri and amici cite the American Bar Association Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases, 31 Hofstra L. Rev. 913 (2003) [hereinafter ABA Guidelines], as the source for learned counsel qualifications. Appellee Br. 26-27, 30-31 (Mar. 15, 2018); Amici Br., Ex. 1 at 10-14 (Apr. 18, 2018); see Wiggins v. Smith , 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (describing ABA Guidelines as "well defined norms"). The 2003 ABA Guideline 5.1 lists qualifications for learned counsel in capital cases. The guideline focuses on counsel's ability to provide "high quality legal representation" rather than "quantitative measures" based on past experience in death penalty litigation. Commentary to ABA Guideline 5.1, at 963-64. The D.C. Circuit has relied upon the ABA Guidelines to ascertain the requirements for mid-trial substitutions of counsel in a non-capital case. See United States v. Bell , 795 F.3d 88, 96 n.8 (D.C. Cir. 2015).

In an order, the military judge noted that Commander (CDR) Mizer testified to his "capital qualifications" at a motions hearing before the commission. AE 348M at 1 & n.2 (citing Unofficial/Unauthenticated Tr. at 6,614-88); see AE 348L. The military judge concluded CDR Mizer was qualified as learned counsel in this case. Tr. 11,011; see Tr. 11,098-99; AE 348M at 2. LT Piette objected to this determination. Tr. 11,098-99.

Congress intended for military judges to have powers "more closely allied" to the powers of Article III judges, and the powers of a military judge under the Uniform Code of Military Justice are modeled after those of a federal district court judge. See Increasing the Participation of Law Officers and Counsel on Courts-Martial, S. Rep. No. 90-1601, at 3 (1968) (submitted by Sen. Samuel J. Ervin, Jr.) (stating one purpose of legislation preceding the Military Justice Act of 1968 was to give military judges in courts-martial "functions and powers more closely allied to those of Federal district judges"). See 10 U.S.C. §§ 826, 836, 839.

One way to address the issue of excusal of defense counsel would be for the Secretary of Defense to amend R.M.C. 505(d)(2)(B) and 506(c), making them consistent with the corresponding Rules for Courts-Martial. R.M.C. 505 should also specify that under this rule "detailed counsel" includes all counsel representing the accused, including "learned counsel." The Secretary of Defense "would be wise to address and resolve promptly" these issues. In re Khadr , 823 F.3d 92, 100-01 (D.C. Cir. 2016) (encouraging Congress and the Executive to take actions to clarify whether judges on the U.S. Court of Military Commission Review may engage in the private practice of law); see also, e.g. , In re Nashiri , 791 F.3d 71, 86 (D.C. Cir. 2015) (suggesting a procedure to avoid any problem with the Constitution's Appointment Clause). In both instances discussed in Khadr and Nashiri , the DoD, Congress, and President followed the recommendations of the Court of Appeals for the District of Columbia Circuit and acted to resolve the stated legal issues without having to wait for the issue to ripen and then be reviewed by the appellate courts. See, e.g. , Ortiz v. United States , --- U.S. ----, 138 S.Ct. 2165, 2171, 2184, 201 L.Ed.2d 601 (2018) (describing how the President and Senate acted on the D.C. Circuit's advice in In re Nashiri and holding that no Appointments Clause violation resulted therefrom).

See Appellee Br. (Mar. 9, 2018); Appellee Br. 23 n.3 (Mar. 15, 2018); Kammen v. Mattis , No. 1:17-cv-03951-TWP-DML, 2017 U.S. Dist. LEXIS 182533 (S.D. Ind. Nov. 3, 2017). To support his motion, Al-Nashiri also relies upon the habeas action filed in the United States District Court for the District of Columbia by Brigadier General (BGen) John G. Baker, the Chief Defense Counsel. Appellee Br. 3 (Mar. 9, 2018). However, the writ in that action was issued based upon a procedural ruling. See Baker v. Spath , No. 17-CV-02311-RCL, 2018 WL 3029140, at *11-14, U.S. Dist. LEXIS 101622, at *32-41 (D.D.C. June 18, 2018). BGen Baker's habeas action, therefore, has no relevance to the appeal before this Court.

Given the manner in which the majority resolved the motion, they did not address whether the district court and our Court are courts of coordinate jurisdiction.

"[T]he general rule [is] that habeas corpus petitions from military prisoners should not be entertained by federal civilian courts until all available remedies within the military court system have been invoked in vain." Noyd v. Bond , 395 U.S. 683, 693, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969) (quoting Gusik v. Schilder , 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (1950) ). Mr. Kammen contends that he currently is in custody for habeas purposes because of the military judge's order that, as counsel of record, he appear at commission sessions. See Kammen v. Mattis , No. 1:17-cv-03951-TWP-DML, doc. 6, at 3 (S.D. Ind. filed Nov. 2, 2017) (arguing that the district court has "statutory authority under 28 U.S.C. § 2241 to grant the writ of habeas corpus. Mr. Kammen, under direct order to appear by Col. Spath, is currently in custody for purposes of 28 U.S.C. § 2241").

The Chief Defense Counsel has not designated Commander Mizer as Al-Nashiri's learned counsel.

I also agree that both the commissions and this Court should proceed carefully when deciding whether, under the relevant circumstances, learned counsel's participation in the defense is to the greatest extent practicable. See Majority Op. supra Part VIII.

The Court also concludes in Part II of its opinion, supra, that the Chief Defense Counsel and the acting Chief abused their discretion and violated the Regulation for Trial by Military Commission (RTMC) when they failed to detail additional counsel to represent Al-Nashiri after Senior Defense Counsel refused to appear before the military commission. The Court says nothing about the basis for this conclusion in its opinion. Again, I fail to see how the Court has pendent jurisdiction to address this issue. Moreover, the government did not specify as an appellate issue whether the Chief Defense Counsel and the acting Chief Defense Counsel abused their discretion and violated the RTMC by their inaction, nor did either party brief the abuse of discretion issue.

The Court rightfully makes clear that if the defense shows improper intrusion, the military judge is to address it under the applicable legal standards and enter an order that he deems just. Majority Op. supra note 22.

Attachments (A) and (E) already are part of the commission record. The government previously moved to include the two declarations, (C) and (D), in its classified appendix. Appellant Mot. (Mar. 20, 2018).

I do not doubt the representations of the government's lawyers. The issue that I address is the proper record for appellate review of any intrusion finding. On remand, the intrusion allegations may well be further developed if defense counsel in a proper manner seek to establish good cause at the trial level based on alleged intrusion into Al-Nashiri's privileged communications with his defense lawyers. This should not be read as saying that the defense is entitled to discovery or the hearing that it seeks. It is for the military judge to determine if discovery or a hearing should be ordered.

The classified appendix C to the majority opinion cites the Wells Declaration and its attachment (C), the declaration of the JDG Commander, in discussing intrusion involving another detainee. The majority does not rely upon attachment (C) to the Wells Declaration for its holdings in the appeal before the Court. The portion of the classified appendix that discusses Al-Nashiri is supported with citations from the commission record.

In the majority opinion, supra Part III.B, it states,
In August 2017, a defense inspection of the room allocated for meetings between Al-Nashiri and his counsel revealed a microphone or microphones that were not connected to recording or transmission equipment. Appellant Disc. Br. Ex. 1, Wells Decl. ¶¶ 19, 20.v-w (June 5, 2018) (Wells Decl.). The government referred to the devices as "legacy" microphones left over from before 2012 when the building was configured for detainee interviews. Id. at ¶¶ 19, 20, 34 & at Attach. B.2; Appellant Juris. Br. 5 (Mar. 5, 2018).
The government assured appellee that the microphone(s) were not connected to any recording devices when Al-Nashiri was using the room during previous meetings with his counsel. See Majority Op. supra Part III.B. It further represented that there had been no recording of counsel's conversations with Al-Nashiri. See Majority Op. supra Part III.B.

In the majority opinion, supra Part III.B, it states that the room in which Al-Nashiri met with his attorneys:
included disconnected, legacy microphones that were not connected to any audio listening/recording device. While it was apparent that this room serving as the new meeting location had been previously configured for interviews, no audio equipment was used while Mr. al Nashiri was in the room....
(Quoting Wells Decl., Attach. B.2.) In the majority opinion, supra Part III.G, it states: " 'Appellant has informed our Court that on October 27, 2017, the JTF offered additional attorney-client meeting spaces for Al-Nashiri and his legal team that, like their former space, [were] not audio-monitored or recorded, and conversations cannot be overheard by non-participants.' Status Rep. 2, 6 (Mar. 28, 2018)." (Some internal quotation marks omitted.).

While in some circumstances an appellate court may properly supplement the record with evidence not before the trial court, those circumstances are strictly limited. See, e.g. , Fed. R. App. P. 10(e)(2) (stating the court may remedy "anything material ... omitted from or misstated in the record by error or accident ...."). This rule, however, does not apply to this Court. Whether the Court has inherent equitable powers to supplement the record has not been decided by us. In any event, the circumstances before the Court would not support the use of any such powers. See Thompson v. Bell , 373 F.3d 688, 690-91 (6th Cir. 2004) (stating "we recognize that a number of our sister circuits have held that the courts of appeals have the inherent equitable power to supplement the record on appeal, where the interests of justice require" and collecting cases), rev'd on other grounds , 545 U.S. 794, 125 S.Ct. 2825, 162 L.Ed.2d 693 (2005).

Given the difficulties that the military judge faced in enforcing his orders to Senior Defense Counsel and the Chief Defense Counsel, the Executive and the Congress may wish to consider legislation that enables military commission judges to hold contumacious parties in civil and criminal contempt. See also Majority Op. supra note 25; 18 U.S.C § 401.